SARAH L. MOSELEY *vs.* CHARLES E. WASHBURN.
HERBERT MOSELEY *vs.* SAME.

Suffolk.    December 11, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*False Answers by Trustee — Law and Fact — Instructions — Exceptions — Trial.*

Where the evidence in a case is conflicting, the defendant is not entitled to a ruling that there is not sufficient evidence to warrant a verdict against him.

At the trial of an action for making false answers in a case where the present defendant was summoned as trustee, it appeared that the defendant, who was attorney for A. in an action against the present plaintiff, had taken from A. a paper purporting to be an assignment of the judgment obtained by him in that action, dated prior to the service of the trustee writ; and that B., a broker who was negotiating a sale of the land upon which the execution issued on the judgment was levied, paid a sum of money to the defendant, which was immedi-

ately attached upon the trustee writ. ˙ There was evidence from which the jury might find that the purported assignment was never intended by the parties to be delivered or to take effect as a contract, but was a mere device to be used to deceive any creditors of A.; and that the payment was made by B. to the defendant to discharge the encumbrance on the land created by the judgment. To interrogatories filed to the present defendant as trustee, he had answered that he ceased to act for A. after the date of the assignment; that he did not know whether the execution had been satisfied; and that he was not accountable to A. for the sum paid by B. *Held,* that the judge rightly refused to rule that there was no evidence to warrant a verdict for the plaintiff, that the jury should render a verdict for the defendant, that there was no evidence to warrant a finding that the defendant knowingly and wilfully answered falsely, and that, even if the assignment was made with fraudulent intent and without adequate consideration, it would be valid between the parties and pass title to the defendant.

No exception lies to the refusal to give instructions in the language requested, if they are given in substance; nor to the refusal to give instructions in regard to the effect to be given to different parts of the evidence.

Under Pub. Sts. c. 153, § 5, the judge presiding at a trial may state the testimony for the purpose of aiding the jury in comprehending the issues and applying the instructions in matters of law, and if a bill of exceptions alleged at the trial does not disclose any material errors in his statement, or any charge upon the facts within the meaning of the statute, no ground of exception is shown.

. TWO ACTIONS OF TORT, for making false answers in two cases where the present defendant had been summoned as trustee. The cases were tried together in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

Cassius C. Powers, called as a witness by the plaintiffs, testified that he was an attorney at law, and was counsel for the plaintiffs in the actions, which were against one Brion, in which the present defendant was summoned as trustee; that he knew that Brion had obtained judgment against the plaintiff Sarah L. Moseley, and the witness brought a petition for a writ of review to set that judgment aside, and also tried to effect a compromise of the judgment, but no agreement was made; that he knew that one Tisdale was negotiating a sale of the property upon which the execution issued on the judgment had been levied; that about that time he brought the two actions above mentioned; that, in April, 1890, he and Tisdale went to the office of the present defendant, and the two trustee writs were given to an officer, who was stationed outside of the office door, the writs having been made for the purpose of attaching the money in the defendant's hands as soon as it was paid to him; that the proper papers were made out, — he did not recollect just what

they were, — and Tisdale produced the money, which the witness counted, and it was then placed on the desk of the defendant, who signed the papers, and the witness left the office ; that, as he passed out of the door, the officer passed in and served the trustee writs upon the defendant ; that, a short time after the service of the writs, the defendant came to the office of the witness and said, " You caught me nicely, did n't you ? I had thought most everything, but I did not think you would trustee me," and said further that " matters had really all been settled between my client and his by the judgment and disposition of the case " ; that up to that time the defendant had not told him that any person other than Brion was interested in the judgment or this money, " with the exception of his fees " ; and that the defendant had said nothing in reference to his being the owner of the judgment.

George W. Tisdale, called by the plaintiff, testified, among other things, as follows : " I am a real estate broker. I was connected with the sale of some property in Needham which belonged to Mrs. Moseley. It was the property on which was the attachment in the case of *Brion* v. *Moseley.* I went to Mr. Washburn's office some time in April, 1890, along in the early part of the month. The transaction was completed on the 25th of April, 1890. I had negotiated the sale of this property to Henry F. May, of Hudson. Previous to that time I had several consultations with Mr. Washburn in reference to it. I went there to find out how much the claim was which was secured by the attachment. He told me the amount was $918. I told Mr. Washburn that I wanted every paper which was necessary to insure a good title to the property. The attachment was to be discharged on payment of the money before April 25th. I went there on April 25th. I met Mr. Powers there ; he was attorney for both. I paid $940 to Mr. Washburn, and got my discharge. My recollection is that I brought the discharge, and that it was signed by Mr. Washburn. In regard to the Pitkin lien, the amount of money that was required to discharge the attachment, as I remember, was $918 ; the remaining $22 which I paid was for the assignment of the lien suit, which was the suit of *Brion* v. *Pitkin,* the same Brion. After paying the money I took the discharge to Dedham. Mr. Washburn said nothing by way of the

claim that anybody except Brion had this claim. He did not claim that he owned the judgment."

The assignment above mentioned was as follows : " Know all men by these presents, that I, John N. Brion, of Needham, county of Norfolk and State of Massachusetts, in consideration of two hundred and eighty-one and $\frac{50}{100}$ dollars, to me paid by George W. Tisdale, of Needham, aforesaid (the receipt whereof is hereby acknowledged), do hereby sell, assign, and transfer to said George W. Tisdale all and whatever sum or sums of money now due and becoming due to me from Sarah L. Moseley, of Newton, in county of Middlesex, and Charles L. Pitkin, of Boston, in the county of Suffolk, and said Commonwealth, and any and all rights and security for the same by reason of my lien claim and proceedings begun for enforcing the same of said
To have and to hold the same to the said George W. Tisdale, with power to collect the same in my name and as my attorney, hereunto duly authorized to his own use. . . . In witness whereof, I have set my hand and seal this twenty-third day of April, 1890. John N. Brion [Seal]. Signed, sealed, and delivered in presence of C. E. Washburn."

On cross-examination, the witness testified : " I should say there was an assignment of the judgment or execution made. I do not remember whether I took it or not. . . . The assignment of the lien cases was for my benefit. The judgment of *Brion* v. *Moseley* did not include the money that was sought to be recovered in these lien cases. Mr. Moseley had nothing to do with those lien cases. I never saw the execution in the case of *Brion* v. *Moseley ;* I do not know whether it was presented when the money was paid. . . . I do not think I ever took the assignment of the judgment. I do not know whether I did or not. I did not consider it particularly essential after I got a discharge of this form."

This paper, which was addressed to the register of deeds for the county of Norfolk, signed by the present defendant as " attorney for said plaintiff," and dated at the end April 25, 1890, was as follows : " The attachment of the real estate in said county of Sarah L. Moseley and Herbert Moseley, made on the 11th of April, 1889, in an action commenced in the Norfolk County Superior Court, by John N. Brion, plaintiff, is discharged,

and the levy made on December 4, 1889, is also hereby discharged, and you will please make a note to that effect on the attachment book in your office."

Delavan C. Delano, called as a witness by the defendant, testified that he was an attorney at law, and, at the time of the transaction in question, occupied an office adjoining that of the defendant; that he witnessed the signature to the assignment made by Brion to the defendant; that he could not give the exact date, but it was about March 25; that he fixed the date by the time of the service of the trustee writs, which was about three or four weeks afterwards; and that he was present at the time of said service, and his attention was then called by the defendant to the fact that he had witnessed the signature to the assignment some time before.

The assignment above mentioned, which was dated March 25, 1890, signed by Brion, and witnessed by Delano, was as follows: " Know all men by these presents, that I, John N. Brion, of Needham, in the county of Norfolk and Commonwealth of Massachusetts, in consideration of one dollar and other valuable consideration paid by C. Everett Washburn, of Wellesley, in said county, (the receipt whereof is acknowledged,) do hereby sell, assign, transfer, and set over to said C. Everett Washburn all my right, title, and interest in and to a certain judgment entered November 4, 1889, in the Superior Court in said county, in my suit against Sarah L. Moseley, on which judgment execution was issued by said court on the 4th day of December, A. D. 1889, and all my rights under and by virtue of said execution are hereby assigned to said Washburn. And I hereby grant to said Washburn full power and authority to act in the premises in my name and stead as fully and effectually as I might do if personally present."

The defendant testified, among other things, as follows: " I am an attorney at law. At one time John N. Brion was my client, and I, as his counsel, brought this action against Mrs. Moseley and recovered judgment. The lien suits were connected with this suit against Mrs. Moseley in this way. The masonry, work, and materials were furnished by Brion to Mrs. Moseley, on a house of Charles L. Pitkin, or two houses. I brought the suit against Mrs. Moseley for the contract price,

and at the same time I put a lien on the houses for the labor alone. Mrs. Moseley had contracted to build these houses for Mr. Pitkin. The judgment in the suit included the material and labor. We started to levy, and found a prior attachment ahead, and the levy had to be suspended, and then there were various counsel employed. Mr. Powers, as counsel, came in and brought a petition for review, and the petition was dismissed. The lien cases required an examination of the title of two houses which had passed through various hands. After the petition for review was dismissed, and a prior attachment was got out of the way, I proceeded to levy, and my execution was put forward again. The place was advertised for sale. Brion attempted to sell the judgment to a creditor, Hobbs, Glidden, & Co. Finally, I took an assignment of this judgment and execution as it then stood ; this was on March 25th, for all my services in all matters up to that time, the amount of which was not exactly fixed ; no bill had been made out, but in full satisfaction for all services. We could not find out what the property was worth, and finally I paid $50 and received full satisfaction for all debts due to me from Brion. . . . Tisdale came to me and said he had a customer who wanted to purchase the place, and would like to have the judgment which I had obtained. He had two or three interviews, and he asked the amount I would take. I did not give the exact figures, because the execution was in the hands of Howard Colburn, a deputy sheriff, and then there were the lien cases. He wanted me to assign them, and he brought me a paper which he had prepared to assign them. He brought me a paper to assign the judgment also. As I did not know the exact figures, the arrangement was made that I would let him know as to some smaller items on the 25th of April, which was the day before the sale was to take place, and at his request I sent for Colburn to come in and give us information as to the amount of his charges. He came in and was present at the time the money was paid by Tisdale. The cost or cash expenses of the lien cases were about $18. I told Tisdale that $940 would satisfy me, and we would assign and give him all our rights. The assignment of the lien, which he prepared, was brought to me the 23d of April, and I despatched a postal card to Brion at Needham, and

on the next day, April 24, he came in and signed that paper, the assignment of liens, and I witnessed it. Tisdale paid me $940 in bills. I delivered to him an assignment of the judgment. I have not seen the assignment since then. None of the papers were drawn at the time the money was paid; they had been previously prepared. About two minutes after Tisdale paid me the money, the trustee writ was served upon me. I saw Mr. Powers within a half-hour afterwards. I said, ' It will not do you any good, you cannot hold the money.' I did not say that anything had been caught, or that the funds would be held."

On cross-examination, the defendant testified: " I had been counsel for Brion, and acted as his attorney in the case against Moseley. I do not remember that I had ever been employed by him in any other matter. He has never consulted with me about his business embarrassments; I did not know in a general way that he was in bad circumstances; I never heard of a claim being made against him. I never made out a bill against him because he settled without it. Up to the 25th of March I had not rendered a bill to· Brion; I had not made any demand on him to pay me; I had asked for money on account. I cannot remember whether I told Colburn that I was the owner of the judgment, and that I had been satisfied, and so had nothing more to do with it. I think I did mention to him, not perhaps at that time, that I had the assignment. I did not tell him I was satisfied; I simply asked him for the figures, and took the money." To the question, " And that money, whatever it was, diverted any interest which you or Brion had, did it not? " the defendant answered, " Yes, it was intended to divert any claim."

John N. Brion, called by the plaintiffs, testified: " I am a builder and mason, and live in Needham. I was the plaintiff in the suit of *Brion* v. *Moseley*, brought by Mr. Washburn, and the defendant in the two suits brought by the Moseleys, in which Mr. Washburn was made trustee. I knew the execution was issued in my favor in the suit brought by Mr. Washburn, and given to Deputy Sheriff Colburn for service. Later on, I should say about fifteen days before the time set for the sale, I found that Tisdale was negotiating with May to sell the property. Tisdale went in to see Mr. Washburn, to see what the probable cost would be to pay off the attachment on the property. Mr.

Washburn and I had understood for at least ten days before this that the claim was to be paid. Mr. Washburn told me that Tisdale had been there, and said he was negotiating for the property, and that the money should be forthcoming. The assignment of the judgment from me to Mr. Washburn was signed April 24th, and not on March 25th. Mr. Washburn did not tell me why the paper was dated back; my attention was not called to the date. I did not read the paper, and it was not read to me. I did not know it was dated back. In the first place, I came in in the morning, and went down to Hobbs, Glidden, & Co., to whom I owed money, and said to them I expected the money would be covered up, and I wanted them to take an assignment of it, as it was to be paid the next day. I went to Mr. Washburn's office, and said to him what I wanted to do with Hobbs, Glidden, & Co., and in the course of the conversation he said if that was my belief that the money would be covered up, he would take the assignment and save it for me so as to get the use of it, and he drew up the paper, and when it was completed he asked me to sign my name to it, and called Mr. Delano in to witness my signature. He paid nothing for it. I remember the check dated March 25th; that was a check I got in exchange for another check I got on a Natick bank. I received the check on a job where I was working, and the hour was too late to get to Natick, and the consequence was I should not be known when I got up there, and I wanted the money to pay my help, as I have done often before. I showed it to Mr. Washburn, and told him the circumstances, and asked him to give me his own check, and I gave him mine in return, and this was one of them. The fifty dollar check had nothing to do with the assignment. There was not a cent's consideration for the assignment. Mr. Washburn had never rendered me a bill, he had never made a demand on me for payment. I have paid him money to defray expenses of suits, and paid witness fees. I have paid him all he asked for. I saw Mr. Washburn the next day after the money was trusteed. On that day I went to his office with the expectation of getting this money. He told me that the money had been trusteed. . . . Before I made the assignment to Mr. Washburn, he told me the claim against Mrs. Moseley's property was of very little value. I think he said this afterwards, after the trustee process was

served. At the time of the assignment he did not represent to me that it was worthless, and that I might as well assign it."

On cross-examination, the witness testified: " The first I knew of any assignment to Tisdale was the morning the money was paid; I have reference to the assignment of liens. Before that time Tisdale's name had not been mentioned as a party to whom any assignment could be made. At the time the money was paid the Moseleys had made no claim against me; the trustee process was the first claim ever made. I had no reason to know that they claimed I owed them. The reason I was afraid they were going to trustee it was that I heard outside that the money should be covered up. The reason that I assigned the judgment to Mr. Washburn and the liens to Tisdale was that Mr. Washburn told me that, in consideration of their buying the judgment, Tisdale would want this assignment of the liens in case something should come out of it, so he could get it for his services for negotiating this affair. I paid Mr. Washburn nothing for his services in the Moseley matter. I supposed he had a bill against me. I supposed when I gave him the assignment that he would be man enough to make his bill out, and keep that out of it, and give me the balance. When this assignment was made we talked quite a while there in the office, and he said he would take the assignment, and, if nothing happened afterward that the money would not be covered up, he would pay me the money, and I supposed by that he would make his bill out, and take that out, and give me the balance. Nothing was said as to the amount. I left that entirely to him."

George W. Tisdale, recalled by the plaintiffs, testified: " I did not prepare the assignment of the liens; I never took it to Mr. Washburn's office for signature. Mr. Washburn was to make these papers, and make the discharge."

The defendant, recalled, testified : " I have made search for the assignment of myself to Tisdale, the assignment of the judgment. I last saw it when it was handed to Tisdale with other papers on April 25, 1890. I have been unable to find it. I cannot remember, I cannot state the conditions; it was brought there already prepared by Tisdale, and I signed it. I did not give Brion the check for $50 in exchange for a check, as Brion said."

The interrogatories, and the answers alleged to be false, were as follows:

" 1. Were you the attorney for the above named John N. Brion in an action brought by him against Sarah L. Moseley in the Superior Court for Norfolk County, and in which judgment was entered for said Brion on or about November 4, 1889? *A.* I was attorney for said Brion in the case referred to, from its commencement until March 25, 1890, at which time I ceased to act for him in anything pertaining to the matter.

" 2. Has the execution issued on said judgment been paid, settled, or satisfied? If yea, state in what manner, and state fully all the facts and circumstances connected with the same? *A.* I do not know, and therefore cannot state whether or not said execution has been paid, settled, or satisfied.

" 3. State whether or not, on or about April 25, 1890, you were paid by the hand of George W. Tisdale a sum of money in payment or settlement of said judgment or claim sued on. If yea, state the amount of said payment, and how long before the service of the writ upon you in this action the same was so paid? *A.* I did receive a sum of money from said Tisdale on or about the date mentioned. I was not accountable for the same, or any part of it, to said Brion. Further than this I decline to answer the interrogatory as being immaterial and impertinent."

Under an order of court, a further answer was made, as follows: " My further answer to interrogatory 3, so far as the same remains unanswered, is no."

The defendant, at the close of the evidence, requested the judge to rule, as matter of law, that the evidence was not sufficient to warrant a verdict against the defendant, and also requested the judge to order a verdict for the defendant. The judge refused so to do; and the defendant excepted.

The defendant then requested the judge to instruct the jury as follows:

" 1. The action cannot be maintained as the testimony of one witness only to the falsity of the defendant's answers, but the same amount of evidence is required as would be necessary to convict the defendant of perjury. 2. If the answer of the defendant was based on facts and is a conclusion drawn from those facts, the plaintiff cannot maintain his action by proof

that the conclusion was erroneous, but he must go further and prove that the defendant knew that the facts would not warrant his conclusion, and that, having such knowledge, he wilfully made a false answer. 3. If the alleged false answer relates to a matter which upon the whole examination appears to be and is immaterial, and so does not cause the trustee to be discharged, the plaintiff is not damaged by such answer, and cannot maintain this action on account of such answer. 4. If the defendant's answers, or any of them, may have more than one construction put upon them, they should be construed *mitiori sensu*, consistently with the presumption of the defendant's innocence. 5. There is no evidence in the case that would warrant a verdict for the plaintiff. 6. Upon all the evidence in the case, the jury should render their verdict for the defendant. 7. There is no evidence in the case that would warrant the jury in finding that the defendant knowingly and wilfully answered falsely upon his examination. 8. If the purpose of the parties on April 25, 1890, was to transfer all rights of the defendant and Brion to Tisdale, that purpose might be effected with or without a written assignment. The payment of the price demanded would operate to transfer all such rights to Tisdale or to May, who furnished the money, and for whom he was acting. 9. Even if said assignment was made with fraudulent intent as against other creditors, yet the assignment would be valid between the parties. It would not be void, and is not voidable in this proceeding. 10. Even if the assignment from Brion to the defendant, dated March 25, 1890, was without adequate consideration, title would pass to the defendant by the assignment, and he would have a right to rely upon it. It would not be void, and is not voidable in this proceeding. He would not be accountable to Brion for the money received by him from Tisdale. 11. The discharge of the attachment is not to be regarded as a discharge of the payment, judgment, or execution. 12. If the discharge of the attachment was signed by the defendant by virtue of the power of attorney in the assignment to him, then the fact that he so signed the discharge is no evidence that the answer to the first interrogatory is false."

The judge gave the third instruction requested, but refused to give the others, and instructed the jury, in part, as follows:

"The first question which arises is whether or not the answer to the first interrogatory [which was stated] is true. . . . Is it true that the defendant ceased to be attorney on the 25th of March, and was he not attorney later than that? I do not understand that, so far as the first interrogatory is concerned, much reliance is placed upon it, and the reason perhaps will appear from the consideration of the other interrogatories and answers, but the claim of the plaintiff is that there was an untrue answer given by the defendant in the very outset. Upon this interrogatory, it is of importance to determine whether it is or is not true, in order to determine, it may be, whether or not it was wilfully and knowingly untrue, and whether the other answers, if you should find them untrue, were wilfully and knowingly false.

" Now, in determining whether or not the answer to the second interrogatory [which was stated] was true, you will resort to the evidence that you have in this case as to the transaction on the 25th of April, 1890. The evidence is fresh in your minds, and I will not undertake to state it in detail, but in a general way this is the claim on the part of the plaintiffs: that prior to that time there had been interviews between Mr. Washburn and Tisdale and counsel representing the plaintiffs, with reference to a settlement or an adjustment of that judgment. Tisdale was desirous of effecting a purchase of property that was under attachment, upon which this execution had been levied, for some customer of his, and knowing of the fact that there was a judgment and execution and levy under that execution, he of course knew that that created an encumbrance on the property, and that the intending purchaser would naturally desire to have it relieved from that encumbrance, because under proceedings under that execution it might be very soon sold; so that I infer from the evidence before you an arrangement was made satisfactory to the persons that were to sell, that is, the Moseleys, and the person who was to buy, that out of the agreed purchase money that had been settled upon a sum sufficient should be taken by Tisdale to pay, satisfy, and discharge the encumbrance that resulted from the levy on that execution ; and negotiations take place and interviews are had in which it is determined, as I understand the claim of the plaintiffs, that the amount that was thus due was some $918 or

$920, and there was some other claim, the Pitkin lien claim, which it was desirable to adjust and settle.' So that the claim of the plaintiff is that an understanding was had, an agreement was made, that the parties should meet on the 25th of April, at the office of Mr. Washburn, for the purpose of paying the amount of money that might be determined to be due upon that judgment.

"Now it appears at that time that Mr. Powers, representing the plaintiffs, had charge of two claims, one of Moseley and one of Mrs. Moseley, against Brion, and it is not claimed here by the defendant that either one of those claims was a matter that had been set off in the original controversy between Brion and Mrs. Moseley, but that they were just claims that were outstanding, claims that were in no wise affected by the litigation between Mrs. Moseley and Brion. Mr. Powers, having charge of these claims, conceives of a method whereby he can secure them, and so, in pursuance of a plan which was made, it appears on the 25th, Tisdale and Mr. Powers go to the office of Mr. Washburn, and he, in pursuance, as they say, of an arrangement, has the officer there who has with him the writs for service, and in order that it might be determined how much was due him a computation was made, and that was determined, and it was ultimately agreed that the sum of $940 should be paid, because of that judgment which had been obtained by Brion against Mrs. Moseley, and being paid under those circumstances to Mr. Washburn, then immediately the officer comes in and makes service upon him, so that he does not contend that he made any payment of this money to Brion after he had received it, or disposed of it. I do not understand that the defendant contends that the situation was other than as stated by the plaintiffs, so far as what actually took place is concerned, neither does he deny but that events happened in substantially the way that is claimed by them.

"Now, under these circumstances, being asked the question whether or not the execution issued on said judgment had been paid, settled, or satisfied, and coming in and saying, ' I don't know, and therefore cannot state, whether or not said execution has been paid, settled, or satisfied,' the inquiry is, in the first instance, Is it true that he did not know, and could not state, whether it

had been paid, settled, or satisfied? He says it had not been paid, settled, or satisfied, because it had been assigned, if I understand him aright, to Tisdale. I have to instruct you that, if that money was paid to him at that time for the purpose of cancelling the obligation that resulted from that judgment, it would make no difference whether there was an assignment made of it, or whether there was a discharge of the attachment and of the levy made in the registry of deeds in pursuance of the agreement that he made there at that time. . . . If the real intent and purpose of the parties was that the obligation resulting from that judgment should be cancelled, discharged, and paid, and the money was paid for that purpose, then it did operate to pay, settle, or discharge the execution which was issued on that judgment.

"You will observe there is some controversy between the parties as to whether or not there was an assignment given to Tisdale at that time, an assignment other and different from the one that has been put before you, and the claim on the part of the plaintiff is that there was no other assignment than that which relates to the Pitkin lien and also to this judgment. This is the assignment that bears date the 23d of April, 1889. The claim on the part of the plaintiff is that Tisdale found this at the office, and that it was executed at the office by Brion, and I understand Brion says that he executed it there. And the claim on the part of the defendant is that he had nothing to do with the preparation of this, but that it must have been prepared by Tisdale, and he took it with him. Tisdale denied that he took it with him or had anything to do with the preparation of it. What I want to call your attention to is some of the language of it. . . . You see it purports to convey to Tisdale all sums of money due to him from Sarah L. Moseley, and also from Pitkin, in reference to the lien case.

"Now, as I have said, the plaintiffs claim that that is the only assignment that was given at that time; but whether there was an assignment or not I do not conceive to be the test here exactly. The true inquiry is, What was the intent of the parties? What did they purpose doing at the time? What was Tisdale there for? What did he pay the money for? What did Mr. Washburn receive it for? What was the agreement between

them? If it was that this judgment should be paid, settled, or satisfied, then you will have to answer the question with reference to the second interrogatory, that the answer of the defendant was not true.

" Now we pass to the third interrogatory [which was stated]. Upon this branch of the case considerable evidence has been offered. The claim on the part of the defendant here is that he was not accountable to Brion because Brion before that time had conveyed or assigned and granted to him that judgment, so that he at that time was the owner of it, and was under no obligation to account to Brion for any part of the proceeds. That, you see, raises a question now as to this assignment itself. The defendant puts in the assignment which bears date on the 25th of March, 1890, which purports to convey to him, a month before this payment was made to him of the $940, all the interest of Brion in that judgment, so that, giving effect to that assignment, then the judgment belonged to Mr. Washburn, and the judgment belonging to him, the proceeds of it when paid would be his money and he would not be accountable, as you see, to Brion under these circumstances, if the transaction was as he says it was, and it was one that the law will sustain as not being in fraud of Brion or in fraud of his creditors.

" Now you are charged with the duty of determining the facts with reference to this assignment to Mr. Washburn. His claim, very briefly stated, is that before the 25th of March there was doubt in his mind or in the mind of his client with reference to how much could be realized from that judgment. His client needed money, and they came to an agreement and understanding whereby Mr. Washburn was to pay and did pay $50, and released and discharged Brion from any claim that he might have against him for any services. In other words, they settled up their accounts at that time. Brion took the $50, and Washburn took the assignment of the judgment. The plaintiffs say that is not true. Their claim is that this judgment was not assigned, as you find it here, until the day before the $940 was paid to the assignee. The assignor of this instrument, Brion, is called, and I suppose it is upon the testimony of Brion that the plaintiff, so far as this interrogatory is concerned, largely relies, in connection with the circumstances attending the transaction. [Brion's testimony is here recapitulated.]

" If you should find the facts to be as stated by Brion, then I say to you that at that time Mr. Washburn did have funds in his hands for which he was accountable, and that the answer to interrogatory three would not be true. If, on the other hand, you should find the statement that is made by Mr. Washburn entirely true about it, and that he had a month before that time, for a valuable consideration, taken an assignment of that judgment, he then would be warranted in making the statement which he did make, that he was not accountable to Brion for his proceeds that came into his hands.

" Then if you should find that the answers to either of these interrogatories were untrue, I say to you, as far as the second and third interrogatories are concerned, they were answers with reference to a material matter, and the discharge of the defendant as trustee was predicated upon them. So if you find them to be untrue, and shall afterwards find upon the instructions I give you that they were wilfully made, falsely made, knowingly made, then you would be warranted upon such a finding to find for the plaintiffs.

" So you come now to the other question. Assuming now, simply for the purpose of the instruction, that you have found that one or both of the answers to the second and third interrogatories are not true in fact, then your inquiry is whether or not the defendant knowingly and wilfully made those false answers, and you come to the question of his knowledge at the time he made them, and his purpose in making them. You cannot, of course, have direct testimony as to what is a man's knowledge concerning any matter, or as to his purpose in any act that he may perform, so that, when the inquiry is whether a man knowingly does a thing or wilfully does a thing, you must resort, of course, to all the facts and the circumstances that surround the transaction, and when you have determined what the exact truth is, then as reasonable men you are to draw inferences as to what the man knew and what his purpose was in the act which he did.

" Now if you should find that he had full means of knowing all the facts and circumstances upon which his answers were founded, then you would be warranted in finding, if they were untrue, that they were knowingly untrue, because he is presumed to know all that the ordinarily intelligent man could know who

had before him the same state of facts which has been proved in the evidence here.

" If you find when he made the answers that they were untrue in point of fact, and if he knew they were untrue, and that he made them wilfully and designedly, then you see the plaintiffs have maintained the issues that are set up, and have established the fact of an untrue answer, wilfully and knowingly made.

" In this case, as in all cases that have been before you, you understand, of course, that the burden of proof is upon the plaintiffs to establish every proposition upon which they rely. That is, they must satisfy you of the untruth in point of fact of some of these answers, of the fact that the defendant knew it was untrue, that he made it wilfully, that it was an effort of the will operating to produce the answer; but in cases like this a different measure, a different degree, of certainty is required to be established from what is found in ordinary civil cases.

" I say to you that it is incumbent upon the plaintiffs to prove their case beyond a reasonable doubt, and they must do it by evidence that must satisfy you beyond reasonable doubt of the propositions that are made by the plaintiffs, and this may be done by the testimony of one witness, provided the testimony of that one witness is corroborated by independent evidence of such a character as to turn the scale and overcome the oath of the defendant.   So you will take into consideration all the evidence in this case."

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*H. Kingman,* for the defendant, submitted the case on a brief.

*S. H. Tyng,* for the plaintiff.

KNOWLTON, J.   In each of these cases the defendant asked the court to rule that there was no evidence to warrant a verdict for the plaintiff.   This ruling was rightly refused.   Although there was little dispute in regard to the papers in evidence, there was a great conflict of testimony in regard to the relations of the defendant to Brion, and the capacity in which he was acting at the time when the payment was made.   There was evidence from which the jury might find that the paper in the form of an assignment from Brion to the defendant was never intended by the parties to be delivered, or to take effect as a contract, but

was a mere device to be used to deceive any creditor who might attempt to obtain the money for the payment of a debt due him. There was also evidence which would well warrant the jury in finding that the payment was made to the counsel to discharge the judgment, which was an encumbrance on the land that Tisdale had bought for his client. In view of this evidence, the judge rightly refused the fifth, sixth, seventh, ninth, and tenth requests for rulings.

The first, second, and third rulings were given substantially as requested. The fourth, eighth, eleventh, and twelfth rulings were to instruct in regard to the effect to be given to different parts of the evidence, upon which the judge was not obliged to give instructions. *Commonwealth* v. *Este*, 140 Mass. 279. *Commonwealth* v. *Gavin*, 148 Mass. 449. *Neff* v. *Wellesley*, 148 Mass. 487. There was such evidence of other important facts in the case that the specific instructions requested, singling out these particular subjects for comment, would have been likely to mislead the jury. The general instructions given presented the issues in such a way as to enable the jury properly to deal with the evidence, according to the view which they took of the conflicting theories of the opposing parties.

Under Pub. Sts. c. 153, § 5, the judge might state the testimony for the purpose of aiding the jury in comprehending the issues and applying the instructions in matters of law. We do not discover any material errors in his statement, or any charge upon the facts within the meaning of the statute.

*Exceptions overruled.*