EDWARD G. SHATTUCK *vs.* CLARENCE F. ELDREDGE.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk. November 18, 1898. — March 31, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Promissory Note — Want of Consideration — Collateral Security — Fraudulent putting into Circulation — Instructions.*

In an action by the holder against the maker of a promissory note, which is payable to the maker's own order and indorsed in blank by him and by A., from whom the plaintiff testifies that he bought it on its date for its face value, if the note was given by the defendant to A. to have it discounted and the proceeds returned to the defendant, and the proceeds were not so returned, and the plaintiff merely lent money to A. on the paper as collateral security, the plaintiff can recover only the amount lent, with interest.

The maker of a promissory note payable to his own order and indorsed in blank is not entitled, in an action on the note, to have the jury instructed that if the note was given to A. to get discounted, or to raise money upon, and the proceeds were to be returned forthwith to the defendant and were not so returned, the note was put in circulation fraudulently, where it appears that A. remained in communication with the defendant, and at intervals of a fortnight was intrusted successively by him with other notes to negotiate in like manner.

If a promissory note payable to the maker's own order and indorsed in blank is given to A. to get money on it for the maker, and, instead of doing that, A. pledges the note for his own benefit, he puts it into circulation fraudulently.

A judge cannot be required to give a ruling based upon some particular view of a portion of the evidence.

THREE ACTIONS OF CONTRACT, the first being upon two promissory notes, the second upon two checks, and the third upon one check. The cases were tried together, in the Superior Court, before *Hammond*, J., who directed the jury to return a

verdict for the plaintiff in each case; and the defendant alleged exceptions, which appear in the opinion.

*C. W. Bartlett & E. R. Anderson,* (*C. F. Eldredge* with them,) for the defendant.

*J. M. Hall & C. C. Blaney,* for the plaintiff.

BARKER, J.   Of the five pieces of negotiable paper sued on, the two included in the first action were notes made by the defendant payable to his own order, and indorsed in blank by him and by Alfred A. Marcus and Son.   The other three, designated as checks in the bill of exceptions, were time drafts drawn by the defendant upon a bank to the order of A. A. Marcus and Son, and indorsed in blank by the payee.

At the trial the plaintiff produced the notes and drafts, and the defendant admitted his signatures and indorsements upon the same.   They were all made in the year 1894, and were as follows: a note of April 23, due August 23; three drafts, one of May 25, due July 21, one of June 12, due July 31, and one of June 25, due July 20; and a note of July 16, due August 16. The plaintiff then testified that he bought them all of Simeon Marcus, of the firm of Alfred A. Marcus and Son, paying in each instance face value less interest, on the several days of the dates, except that he purchased the draft of June 25 on June 26, and that Simeon Marcus indorsed each of the notes and drafts in the plaintiff's presence; also that none of the paper was paid at maturity; that he demanded payment, and the defendant paid him fifty dollars upon the draft of June 25 on December 28, 1894, and that the plaintiff had received no other payments.

The defendant then testified that he gave the paper to Simeon Marcus to be cashed or discounted, and the proceeds to be returned to himself, and that Marcus did not return the proceeds. Also that there had been a number of conversations between the plaintiff and himself, in which he asked the plaintiff how many of the defendant's notes and checks he held, and the plaintiff refused to tell, and that in these conversations the defendant said that he had given the paper to Marcus to be discounted and the proceeds returned, and that in these conversations the plaintiff had admitted that he lent money to Marcus on the paper to the amounts of from fifty to sixty per cent, and that thereupon the defendant offered to pay the amounts so lent with interest,

and that he had so paid and had received back two notes or checks, and that the payment of December 28, 1894, was on account of the money so lent by the plaintiff to Marcus. The plaintiff was recalled, and denied all these conversations, and testified that he had no knowledge until the defendant testified as to what Marcus did with the money which the plaintiff paid. This was in substance all the material evidence, except that the defendant testified that from time to time, until Marcus went into insolvency during the autumn after the paper was made, he told the defendant that he, Marcus, had the paper in his office, and would bring in the proceeds.

The defendant made eight requests for instructions. Of these the second and third related to the time when the drafts became due, and are waived. The first and fourth were, in substance, that if the paper was given by the defendant to Marcus to have it discounted and the proceeds returned to the defendant, and the proceeds were not so returned, and the plaintiff merely lent money to Marcus on the paper as collateral, the plaintiff could recover only the amount lent, with interest. The jury were so instructed in substance, although the requested rulings were not given in the words of the requests. The fifth was, that the burden of proof was on the plaintiff to show that he purchased the paper before maturity and for a valuable consideration. The sixth was, in substance, that if any of the paper was taken by Marcus to get discounted or to raise money upon, and the proceeds were to be forthwith returned to the defendant and were not so returned, such paper was fraudulently put in circulation, and the burden of proof would be upon the plaintiff to show that he took such paper for value and in good faith, before maturity and without notice.

The remaining request was to the effect that, if the jury should believe the defendant's evidence, the paper was fraudulently put in circulation, and the burden would be upon the plaintiff to show that he took the paper without notice or knowledge of any fraud.

The presiding justice first submitted to the jury four questions in each case, and the jury found that none of the paper was fraudulently put in circulation, that none of it was taken by the plaintiff as collateral security, and that all of it was bought by

the plaintiff, and paid for at its face value, less interest, and that nothing had been paid upon any of the paper, except a payment of fifty dollars paid on account of the instrument of June 25, 1894. Thereupon a verdict was ordered for the plaintiff in each case.

In submitting the questions to the jury, the presiding justice did not give in terms any of the instructions requested, and the defendant excepted to the refusal, and to the charge so far as it was not consistent with the requests.

1. The defendant contends that there was error in not giving in terms his first and fourth requests, and that the jury were in effect instructed that, if the plaintiff upon taking the paper lent Marcus money which the latter then borrowed, the transaction would not be a lending upon collateral, thus leaving the jury to infer that such a transaction would be a purchase of the paper. But the first and third requests were not framed with reference to any supposed distinction between taking the paper as security for a pre-existing debt, or for a loan made at the time. The charge does not seem to us open to the objection urged, and the further instruction, given when the jury were recalled, was that if when the paper was passed to the plaintiff it was taken as security for a debt then due or for money borrowed at the time, it would make no difference.

2. It would have been wrong to give in terms the fifth and seventh requests. Whether the defence of want of consideration was open depended upon the weight to be given to the defendant's testimony. Requests based upon some particular portion of the evidence may be given by a judge if he sees fit, but he cannot be required to give a ruling based upon some particular view of a portion of the testimony. *Kellogg* v. *Tompson,* 142 Mass. 76. *Stanchfield* v. *Newton,* 142 Mass. 110. *Commonwealth* v. *Gavin,* 148 Mass. 449. *Neff* v. *Wellesley,* 148 Mass. 487. *Moseley* v. *Washburn,* 167 Mass. 345, 362.

3. The remaining question is as to the manner in which the court dealt with the questions arising from the way in which the paper had been put in circulation. The defendant contends that, if he gave the paper to Marcus to have it discounted and the proceeds returned to himself, and Marcus disposed of the paper and did not return the proceeds, it necessarily follows that the paper was put in circulation fraudulently. Under the

request the jury would have been required to find that the paper was put in circulation fraudulently, if for any good reason Marcus had not returned the proceeds forthwith An honest agent might be robbed, or innocently and without fault lose the proceeds on his way to the defendant, or the money might be attached as the property of his principal, or the agent might be seized with an illness which made it impossible for him to act, after obtaining the proceeds and before he could return them. Marcus did not put the paper into circulation fraudulently if he took it honestly, and honestly passed it to the plaintiff, and honestly took the proceeds to return them to the defendant. In that case, he never took or held or passed the paper fraudulently, although after thus getting the proceeds, he fraudulently omitted to return them. While the fraud might permeate the whole transaction, and make Marcus a fraudulent holder, it might be only in the failure to deliver the proceeds. Where the person who negotiates the paper at once disappears, as in *Hall* v. *Featherstone*, 3 H. & N. 284, cited by the defendant, and *Smith* v. *Braine*, 16 Q. B. 244, on the authority of which *Hall* v. *Featherstone* was decided, the natural inference is that he acted fraudulently throughout. But when, instead of running away, he remains in communication with the maker, and at intervals of a fortnight is intrusted successively by the maker with other notes to negotiate in like manner, it would be wrong to rule that a failure to return the proceeds necessarily shows a fraudulent putting into circulation.

The jury were instructed that, if Marcus was authorized to get money for the defendant on the paper, and instead of that pledged the paper for his own benefit, he put it into circulation fraudulently. This was correct. In that portion of the charge which says that, if Marcus was authorized to get money for the defendant upon the paper and the plaintiff bought the paper, that was the end of the defendant's contention that the paper was fraudulently put into circulation, and in other similar expressions, taken alone, the court seemed not to recognize the possibility that one who is intrusted with negotiable paper to get it discounted and to return the proceeds to the maker, may be found to have acted fraudulently in negotiating the paper, as well as in omitting to return the proceeds.

Although parts of the charge possibly might be construed as open to the interpretation that, if an indorsee of paper who has authority to sell it for the maker does in fact sell it to one who pays value, the fact of sale makes it impossible to find that the paper was fraudulently put into circulation, although both parties to the sale acted in collusion, that would be a very forced construction. The only effect of showing that the paper was fraudulently put into circulation would be to put upon the plaintiff the burden of showing that he took the paper in good faith, and for value, and before its maturity. The question whether he did so was submitted to the jury under correct instructions; but owing to the fact that another issue, whether the paper was fraudulently put into circulation, was embraced in the same question, it might be contended that the negative answer is not a finding that the plaintiff took in good faith, although he bought the paper for its face value, less interest. Upon the question whether he bought before maturity and in good faith, the only evidence was the plaintiff's own testimony. There was no contradictory evidence, and nothing tending to show that he held the paper for the benefit of Marcus, or was his agent or tool, or was in collusion with him. It could be said, as matter of law, upon the whole evidence, that if in fact the paper was fraudulently put in circulation by Marcus, that fact was no defence to the actions, and the defendant was not harmed by any possible inaccuracy in the instructions.

*Exceptions overruled.*