JAMES J. POWER *vs.* DAVID BEATTIE & another.

Bristol.    October 24, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence.    Maxims.    Pleading, Civil,* Variance.    *Practice, Civil,* Conduct of trial.    *Words,* " Delivery."

In an action against a contractor engaged in constructing a building by a teamster for personal injuries from being thrown from his team owing to the defective condition of an inclined temporary roadway down which he was driving in delivering stone in the cellar of the building in process of construction, there was evidence that the plaintiff was driving two horses attached to a stone gear, that in using the same roadway on four previous days and twice on the morning of the accident the plaintiff had found it safe, that on the occasion of the accident he was carrying a load of three stones weighing five or six tons, that he stopped his team on the opposite side of the street, waiting for orders, until a man whom he had seen giving directions on the lot during the three or four days preceding the accident told him to " come on," as he had been told to do on all the previous occasions when he delivered stone on the lot, that he drove across the sidewalk and saw that a piece had been cut off the end of the roadway, making a hole which went down like a flight of steps, that his horses were walking but he did not stop them because they could not hold the load, that he was standing on his team as he drove in and when he reached the cut his forward wheels went down, and he was injured.    *Held,* that there was evidence for the jury of due care on the part of the plaintiff; *also,* that it could not be said that the plaintiff assumed the risk of the accident and the maxim *volenti non fit injuria* had no application.

In an action against a contractor engaged in constructing a building by a teamster for personal injuries from being thrown from his team owing to the defective condition of an inclined temporary roadway down which he was driving in delivering stone in the cellar of the building in process of construction, there was evidence that since the last time that the plaintiff had driven over the temporary roadway a cut had been made in it so as to make it dangerous to drive a heavily loaded team over it, that in using the same roadway on four previous days and twice on the morning of the accident the plaintiff had found it safe, that on the occasion of the accident he stopped his team on the opposite side of the street, waiting for orders, until a man whom he had seen giving directions on the lot during the three or four days preceding the accident told him to " come on," as he had been told to do on all the previous occasions when he delivered stone on the lot, that thereupon he drove down the roadway and the accident occurred.    The plaintiff was unable to identify the man who told him to come on.    It appeared that the defendant employed a foreman and a sub-foreman, both of whom were upon or about the premises at the time of the accident.    Both of these men testified that they did not call to the plaintiff to come on.    It did not appear that any workman other than those of the defendant were in or about the cellar.    *Held,* that there was evidence for the

jury of negligence on the part of some one for whose acts the defendant was responsible in inviting the plaintiff to drive down the roadway without informing him that its condition had been changed for the worse since the last time he used it.

In an action against a contractor engaged in constructing a building by a teamster for personal injuries from being thrown from his team owing to the defective condition of an inclined temporary roadway down which he was driving in delivering stone in the cellar of the building in process of construction, the declaration alleged that the plaintiff was in the employ of one R. who had contracted with the defendant to deliver to him certain quantities of stone for building purposes on certain premises within the control of the defendant, and "that it was the duty of the defendant to provide for R. and his servants a safe and suitable way for the delivery " of the stone upon the premises within his control, which the defendant negligently failed to do. It appeared that when the accident occurred the plaintiff was employed by R. to carry stone from a railroad station to the lot upon which the building was being constructed by the defendant, but there was no evidence of a contract between the defendant and R. *Held,* that the word " delivery " when read in connection with the other language of the declaration should not be confined to a delivery under a contract with the defendant, but included any transfer of possession of the stone from R. through the agency of the plaintiff to the defendant with the defendant's consent, and that a person engaged in such delivery was rightfully on the premises in control of the defendant and was entitled to a reasonably safe place in which to make the delivery or to have a reasonable opportunity to determine whether to make it or not, so that it was not necessary for the plaintiff to prove a contract between the defendant and R. and without evidence of such a contract, upon proof of due care on the part of the plaintiff and of negligence on the part of the defendant, a verdict for the plaintiff could be supported on the declaration.

A trial judge cannot be required to make a ruling based on a particular view of a portion of the evidence.

TORT by a teamster for personal injuries from being thrown from his team and having a stone fall on his leg owing to the defective condition of an inclined temporary roadway down which he was driving in delivering stone in the cellar of a building in process of construction by the defendants. · Writ dated March 26, 1904.

The plaintiff's amended declaration was as follows : " And the plaintiff says that on the 17th of July 1903 he was in the employ of one Peter Rafter of Taunton, and that said Rafter had contracted with the defendants to deliver to them certain quantities of stone for building purposes on certain premises within the control of the defendants, and situated on the north side of Court Street, in Taunton, in said county ; that on the 17th day of July 1903 while in the employ of said Rafter and as his servant in the execution of said contract with the defendants, with horses and team delivered several loads of stone to the

defendants on said premises on said Court Street; that it was the duty of the defendant to provide for Rafter and his servants a safe and suitable way for the delivery of said stones upon the premises within their control, but these defendants carelessly and negligently failed so to do but did furnish the plaintiff an unsafe, dangerous and defective way, whereby and while in the exercise of due care, the plaintiff was hurt and injured, to his great damage."

In the Superior Court the case was tried before *Holmes*, J. The evidence showed that the accident happened at about half past two o'clock in the afternoon of July 17, 1903. The defendants had made a contract to erect a new registry building in Taunton, and were engaged in the construction of the building at the time of the accident. The plaintiff was employed by one Peter Rafter to carry stone from the railroad station to the lot upon which the building was being erected. He had a stone gear, the platform of which was about four and one half feet high, drawn by two horses, and had been engaged in the work of delivering stone on the county lot for about four days before the accident, and had delivered four loads a day. On the day of the accident he delivered two loads in the morning, the last one at about half past eleven. In order to deliver the stone he had to drive over a block paved incline about eighteen inches long and seven inches high across the sidewalk, which was seven or eight feet wide, through a gateway on to the lot, and straight ahead for a distance of about thirty-five feet down an inclined earth roadway five or six feet wide and about two feet lower at the end than at the beginning, with a gradual slope into the cellar of the building. During all the time of the plaintiff's employment there were a number of men at work in the cellar, some laying stones, some tearing down the old building and others excavating. The plaintiff's team was unloaded by men working on the lot at the end of this way. The plaintiff testified that at the time he delivered the last load of stone before the accident the roadway into the cellar was in the same condition that it had been during all the time he had worked; that he came with another load of three stones weighing five or six tons at about half past two in the afternoon, and as he got up on to the sidewalk saw that a change had been made at the end of the way, and a piece had

been cut off, making a hole which went down like a flight of stairs; his horses were walking; that he did not stop his horses because they could not hold the load; that before he drove on to the lot he stopped his team on the opposite side of the street from the building " and waited for orders to see where the stone would go to," until a man whom he had seen giving directions to the workmen on the lot during the three or four days preceding the accident told him to " come on "; and that this had been the procedure on all the previous occasions when he had delivered stone on the lot; that he was standing on his team as he drove in, and when he reached the steps where the cut had been made his forward wheels went down, and he was injured. He could not identify the man who told him to come on. His statements were somewhat conflicting as to whether he could see the place of the accident from the sidewalk, although he testified that there was nothing to obscure his vision from the sidewalk to the bottom of the cellar, but on cross-examination he was asked the question " When you got on the sidewalk you knew it was cut, but could not stop ? " and answered " Yes.".

One Sheehy, called by the plaintiff, described the way into the cellar from the sidewalk as having a gradual incline with a difference of about a foot and a half between the highest point at the entrance of the way and the lowest point at the end of the inclined way in the cellar. When he got to the plaintiff immediately after the accident he found that the way at the place of the accident had been cut down on the right hand side, so that it was about two feet lower than on the left hand side.

One of the defendants testified that at the time of the accident he was engaged in the construction of the county building, but had no contract or agreement with Peter Rafter for the delivery of his stone, and that his contract was with the Quincy Granite Construction Company; that he had a foreman and a sub-foreman at work on the premises but no other persons in authority under him, and that he was not present at the time of the accident.

One Puleston, called by the defendants, testified that he was the foreman for the defendants, and did not tell the plaintiff to " come on " or speak to him at the time of the accident; that the sidewalk was level and about seven or eight feet wide, the gutter being six or seven inches lower than the sidewalk; that

the plaintiff's horses came down the incline into the cellar at a slow trot, and were stopped after they left the incline and on level ground by a pile of bricks and mortar, which threw the stone and the plaintiff off the team, causing the injury. One Knox testified that he was the sub-foreman under Puleston; that he did not speak to the plaintiff at all about entering the premises, nor call to him.

The defendants, among other requests, asked the judge to make the following rulings:

1. The plaintiff was not in the exercise of due care.

2. The plaintiff assumed the risk of the accident which happened to him.

3. The doctrine of *volenti non fit injuria* applies here and the plaintiff cannot recover.

4. There is no evidence that negligence of the defendants caused the accident.

5. Upon all the evidence in the case the plaintiff is not entitled to recover.

6. The plaintiff was not lawfully upon the premises where the accident happened by reason of any contract made between his employer and the defendants which he was carrying out.

7. There was no invitation by the defendants or by any one authorized by them to extend an invitation to the plaintiff to enter upon the premises, and the plaintiff cannot recover under his declaration.

8. Under the plaintiff's declaration he is not entitled to recover unless he proves that he was on the premises where the accident happened as a servant of Rafter in the execution of a contract entered into between the defendants and Rafter.

9. If the plaintiff when he drove across Court Street and up to the sidewalk on Court Street had a clear, unobstructed view of the roadway up to the place of the accident, and saw its condition, or in the exercise of reasonable care should have seen its condition, then he cannot recover.

11. There is no evidence in the case which would warrant the jury in finding that the grade of the way on which the accident happened was improper, unsafe and dangerous, and the plaintiff is not entitled to recover under his specifications.

12. If the jury finds that the accident happened by reason of

the sinking of the right forward wheel in the ground the plaintiff cannot recover.

The judge refused to make any of these rulings, and submitted the case to the jury with instructions to which no exception was taken. The jury returned a verdict for the plaintiff in the sum of $750; and the defendants alleged exceptions.

*J. W. Cummings,* (*C. R. Cummings* with him,) for the defendants.

*W. E. Kelley,* for the plaintiff.

RUGG, J. The case was properly submitted to the jury, and the instructions requested by the defendants were rightly refused. The three main questions are extremely close. It is not for us to decide upon the facts, however, but only to determine whether there was sufficient evidence to support the finding by the jury for the plaintiff.

1. There was no want of due care on the part of the plaintiff in relying upon the signal of the man, whom he had seen giving directions to workmen about the premises, and who had, during the three or four days of his work, given him the signal to drive into the cellar, under conditions which had been before found to be reasonably safe. There was evidence that when he reached the point where he could see the changed condition of the way into the cellar, it was impossible for him to hold his team. Although the force of this evidence was considerably shaken upon cross-examination, yet upon the whole it cannot be said that there was insufficient ground for finding the fact to be as stated by the plaintiff. If there was no negligence on his part in driving his heavily loaded gear upon the sidewalk, and if after reaching this place, which was the first point on his route from which he could see the changed and dangerous condition of the way over which he was to drive into the cellar, it was beyond his power to stop his team, in that case the burden upon him of showing his own due care was sustained. If the jury found this to be the situation, then there was no occasion for the application of the maxim *volenti non fit injuria.*

2. If the evidence of the plaintiff be taken at its full value, it warranted a finding that although he knew of the excavation going on in the cellar, and the likelihood of general changed conditions there, yet habitually during his experience one who

appeared to be exercising general control over the men at work about the place had beckoned him forward, and at all such times he had been able to drive into the cellar with safety, and that he had been in the habit of stopping on the opposite side of the street to await this invitation. Although the plaintiff was unable to identify this man, nevertheless, it appearing that the defendants employed a foreman and a sub-foreman, both of whom were upon or about the premises at the time of the accident, the jury may have inferred in connection with other evidence that one of these men gave the signal to drive forward. Both of these men testified that they did not call to the plaintiff to come on, but this particular testimony may have been discredited by the jury. As it did not appear that any other workmen were in or about the cellar save those in the employ of the defendants, the jury might have found that a man, who for three or four days had been giving directions to the workmen, and who had continuously told the plaintiff to come on, whenever he had driven into the cellar, was acting under the authority of the defendants. All these circumstances together are enough to support a finding of negligence on the part of some one, for whose doings the defendants were responsible, in thus inviting the plaintiff to drive down the way without advising him that its condition had been changed for the worse since his last previous trip. There was also evidence from both the plaintiff and Sheehy that the condition of the way into the cellar at the time of the accident was such as to make it dangerous to drive a heavily loaded team over it.

3. The averments of the plaintiff's declaration at the lowest set up an employment of the plaintiff by Rafter as a driver and the delivery as such driver of quantities of stone to the defendants on the premises for the purpose of building, and a statement of the duty on the part of the defendants to provide for Rafter and his servants a safe place for the delivery of the stone. The word "delivery" as thus used should not be construed in a narrow or technical sense, and, when read in connection with the other language of the declaration, it imports a transfer of possession of the stone from Rafter through the agency of the plaintiff to the defendants, with the latter's consent. This being so, a person engaged in such delivery was rightfully upon

the premises of the defendants, and was entitled to a reasonably safe place in which to make the delivery, or a reasonable opportunity to determine for himself whether he would undertake to make the delivery under all the circumstances. While the declaration is not to be commended as pleading, it is sufficient, upon all the evidence, to support the verdict.

4. What has been said disposes of all the requests for rulings except the twelfth. This was properly refused. A trial judge "cannot be required to give a ruling based upon some particular view of a portion of the testimony." *Shattuck* v. *Eldredge*, 173 Mass. 165, 168.

*Exceptions overruled.*