WILLIAM J. QUINN *vs.* STANDARD OIL COMPANY OF
NEW YORK.

Hampden. April 7, 1924. — May 21, 1924.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Negligence,* In use of highway, Motor vehicle. *Joint Tortfeasors,* Cove-
nant not to sue. *Evidence,* Competency, Extrinsic affecting writing,
To impeach witness. *Witness,* Impeachment. *Practice, Civil,* Re-
quests, rulings and instructions; Exceptions: allowance of bill after
resignation of trial judge.

In an action against a corporation for personal injuries, the defendant in
its answer alleged that, if it was liable, it was liable jointly with an
individual, and that the plaintiff had received a sum in satisfaction
and release of his claim against that individual so that the defendant
was discharged from liability. In cross-examination of the plaintiff
at the trial, the defendant asked if he had not settled with the alleged
joint tortfeasor, to which the plaintiff replied in substance that he had
not but that he had signed a paper which was characterized by his
lawyer as "a covenant not to sue." The defendant moved that the
words, "covenant not to sue," should be stricken out on the ground
that the answer was irresponsive and should have been simply "Yes"
or "No." The motion was denied, and the judge instructed the jury in
substance that the statement of the witness that the paper signed was a
"covenant not to sue" did not prove that it was such but was simply
a statement of his understanding of the nature and quality of the signed
paper. *Held,* that the denial of the motion was proper within the dis-
cretion of the judge, as the judge properly might consider that the
witness could not accurately have answered the question by a cate-
gorical "Yes" or "No."

At the trial of the action above described, the defendant called an attorney
who acted for the alleged joint tortfeasor in the negotiations with the
plaintiff, and he testified to the payment of a sum of money and in
cross-examination stated that the sum "was paid for a discontinuance
of the action and for a covenant not to bring any further suit." The
defendant moved that the statement that the sum was paid "for a
covenant not to bring any further suit" be stricken out because it was
a characterization of an instrument in writing. Subject to his excep-
tion, the motion was denied. Duplicate originals of two papers show-
ing the transaction in question, produced by the witness, then were
admitted in evidence subject to exceptions by the defendant. One of
the instruments was a bilateral agreement under seal between the
plaintiff and an insurer of the alleged joint tortfeasor, and the other
was a unilateral agreement under seal, executed by the plaintiff alone.
The absence of the other duplicate original of each paper was not ac-
counted for. *Held,* that

(1) Under the pleadings, the plaintiff had a right to show that the money paid by the alleged joint tortfeasor to him was paid in consideration of his agreement under seal and that it was not paid to him solely on account of any alleged liability of the alleged joint tortfeasor;

(2) It was proper to admit in evidence one of the duplicate originals of the bilateral instrument under seal without accounting for the nonproduction of the other duplicate original;

(3) An exception to the admission in evidence of the duplicate original of the bilateral agreement on the ground that it contained declaratory clauses harmful to the defendant was overruled because the trial judge instructed the jury to ignore those clauses;

(4) It was improper to admit in evidence the unilateral agreement under seal, either as an original or as a copy of the original, without a legal excuse for the nonproduction of the other original; but, since it provided for the making of a covenant not to sue and it was not argued that in fact such an instrument was not drafted, executed and delivered in accordance with its terms, the defendant was not harmed by the introduction of such unilateral agreement.

At the trial of the action above described, there was evidence tending to show that, when the plaintiff was driving a horse and wagon along a public street in a city, he was overtaken by a fully loaded tank oil truck driven by an employee of the defendant; that the alleged joint tortfeasor, driving an automobile, came from behind the truck and was passing it on the left at the rate of from twelve to fifteen miles an hour, the truck going from eight to ten miles an hour; that the distance between the side of the truck and the side of the automobile as it passed might have been anywhere from two to ten feet; that when the front of the automobile had passed the front of the truck, the front wheels of the truck were suddenly turned to the left, hitting the rear mudguard of the automobile of the alleged joint tortfeasor, in consequence of which the truck collided with the plaintiff's wagon. After giving at length testimony which tended to show the facts above described, one riding with the alleged joint tortfeasor further testified that he had not told the alleged joint tortfeasor that "some day he would catch it for turning in so quick ahead of automobiles, and now he has caught it." The defendant offered to show by other testimony that such witness had said to another person that he had told the alleged joint tortfeasor that "he would get it some day for driving too close to automobiles, and now he has got it." The evidence was excluded subject to an exception by the defendant. *Held*, that

(1) The exception to the exclusion of the testimony must be sustained, since the testimony would have tended to impeach testimony which was of material benefit to the plaintiff;

(2) There was evidence for the jury on the question of negligence of the defendant's employee.

It is proper for a judge to refuse requests for instructions to the jury based upon an assumption of fact which the jury might not adopt.

It is not proper, after resignation by a judge before whom an action was tried, for exceptions taken at the trial to be allowed both by him and by another judge of the Superior Court.

TORT for personal injuries originally brought against the Standard Oil Company of New York, a corporation, and Jacob Chase, and afterwards discontinued against Chase and by amendment prosecuted against the defendant corporation only. Writ dated August 16, 1920.

In the Superior Court, the action was tried before *King*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The defendant then asked for the following rulings, among others:

" 2. The defendant was under no obligation to watch out for vehicles coming from behind.

" 3. The defendant was under no obligation to give any warning to Chase that he intended to turn out to pass Quinn.

" 4. The defendant had a right to rely upon a signal from Chase if he intended to pass him."

" 18. The fact that Chase has settled with the plaintiff is evidence of his responsibility for the accident."

The requests were refused. Material instructions given by the judge to the jury are described in the opinion. There was a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

The case was submitted on briefs.

*W. H. Brooks, J. P. Kirby & D. H. Keedy*, for the defendant.

*E. A. McClintock, D. B. Hoar & R. D. Houlihan*, for the plaintiff.

PIERCE, J. This is an action of tort, brought originally against the Standard Oil Company of New York and Jacob Chase, for injuries received by the plaintiff as the result of a collision while he was driving a horse and wagon southerly on Main Street in Springfield, Massachusetts. All three parties were proceeding in the same direction when a collision, between an automobile driven by Chase and an oil truck of the Standard Oil Company and between the truck and the plaintiff's wagon, caused the horse to bolt and threw the plaintiff out. The original declaration is not printed nor referred to in the bill of exceptions.

Before the trial, the plaintiff filed a discontinuance as to

Chase, which reads: " In the above entitled action it is hereby stipulated and agreed that said action be and the same is hereby discontinued without costs as against the defendant the said Jacob Chase and against him only, reserving all rights against the defendant Standard Oil Company of New York." An amended declaration, without date but presumably filed after the entry of the discontinuance of the action against Chase, in substance charged and attributed the injury of the plaintiff to the negligent operation of the truck by the servants and agents of the Standard Oil Company. The answer of the defendant thereto, in addition to a general denial, and an allegation of lack of due care in the plaintiff which contributed to cause said injury, specifically alleged: " If the defendant is liable . . . [it] is liable jointly with one Jacob Chase of said Springfield, with whom the plaintiff has settled this cause of action and discharged him from liability thereon, by reason whereof the defendant is not liable in this action. If the defendant is liable it is liable jointly with one Jacob Chase, of said Springfield; that the plaintiff has accepted, or agreed to accept, from the said Jacob Chase a certain sum of money in satisfaction of the cause of action and of all the damages alleged in the plaintiff's declaration, by reason whereof the plaintiff's cause of action is wholly settled and discharged." At the trial, in support of its special defence, the defendant in cross-examination asked the plaintiff in substance if he had not settled with Chase during the week last past; to this question and to many similar questions put to him in a long cross-examination, the plaintiff replied in substance that he had not settled with Chase but had signed a paper which was characterized by his lawyer as a " covenant not to sue."

The exceptions taken to the refusal to strike out the words " covenant not to sue " on the ground that the answer was irresponsive and should have been simply " Yes " or " No " must be overruled, as the judge properly might consider, as he did, that the witness could not accurately answer the question by a categorical " Yes " or " No; " and the judge in the proper exercise of his discretion could allow the answer to stand, with the instruction in substance that the statement

of the witness that the paper signed was a " covenant not to sue " did not prove that it was such but was simply a statement of his understanding of the nature and quality of the signed paper.

At a later time in the trial, in proof of its defence that there was a full settlement, the defendant called as its witness one Clifford S. Lyon, who was counsel in the case for Jacob Chase; he was employed by the Maryland Casualty Company which insured Chase and was known to the attorneys for the plaintiff as the representative of the insurance company. In direct examination this witness was asked " whether . . . [the insurance company] came to some settlement with the attorneys for the plaintiff " and answered " I came to an agreement." He was then asked " How much money did you agree to pay unconditionally to the plaintiff? " and answered " That is all set forth in the written agreement." The attorney for the defendant then said " We are not a party to any agreement they entered into." To this the trial judge said " As between the parties the written agreement would be conclusive. I think that is all I can say. That is, the rule is, gentlemen, between parties, between you and me entering into a contract, the writing is to bind us. But it here is raised by some one who was not a party. That is, the Standard Oil Company says, ' We have nothing to do with the settlement between the insurance company, if there was such a settlement, and the plaintiff . . . ' Therefore, I feel bound to allow this question. I think it is open to you to show if you can that there was a complete settlement and you aren't limited to the contract itself." Thereupon the witness answered: " There was an agreement entered into. $2,500 was paid. I gave a check for that amount to Mr. Hoar. That was less than the amount of the policy."

In cross-examination the witness said " That agreement was represented by certain papers in writing. I have not the papers with me, I sent them to the insurance company in Boston immediately upon receipt of them. They were executed in duplicate. The paper that you now show me is the duplicate of one of them. And the paper that you now show me is the duplicate of another paper." (These

papers were marked for identification " 12 " and " 13.") The witness was then shown another paper which was the discontinuance of the action against Chase filed in court, *supra*. The witness then testified that the sum of $2,500 had been paid by the insurance company through him, and " was paid for a discontinuance of the action and for a covenant not to bring any further suit." The defendant then asked " that the last," that is, that it was paid " for a covenant not to bring any further suit," be stricken out as it is a characterization of the paper, a description of the paper they were signing. The judge refused the request and the defendant saved an exception thereto. The plaintiff then offered, and the judge received in evidence, subject to the exception of the defendant, Exhibit " 12," which reads as follows:

" In consideration of the payment by Maryland Casualty Company, a corporation duly established according to law and having a usual place of business in Springfield, Hampden County, Massachusetts, of the sum of twenty five hundred (2500) dollars, the receipt whereof is hereby acknowledged, I, William J. Quinn of Longmeadow, said Hampden County, hereby covenant not to sue one Jacob Chase (insured by said Maryland Casualty Company) on account of any matter or thing involved in any of the causes of action set forth in the suit now pending in the Superior Court within and for said County of Hampden, brought by me against the Standard Oil Company of New York and said Jacob Chase and being #16816 on the docket of said court. The said Quinn does not hereby nor in any manner whatsoever release the said Jacob Chase on account of any of said causes of action, any covenant herein on the part of said Quinn in favor of the said Chase being merely a covenant not to sue; the said Quinn also reserving all his rights in said action as against the Standard Oil Company of New York."

The plaintiff then offered, and the judge received in evidence subject to the exception of the defendant, Exhibit 13, which reads as follows:

" This agreement, made this eighth day of December, A.D. 1922, by and between Maryland Casualty Company, a corporation duly established according to law and having a

usual place of business in Springfield, Hampden County, Massachusetts, hereinafter also called 'Company,' and William J. Quinn of Longmeadow, said Hampden County.

" Witnesseth —

" Whereas the said Quinn has brought an action against Standard Oil Company of New York and one Jacob Chase in the Superior Court for said County of Hampden, which action is now pending and is # 16816 on the docket of said Court, and

" Whereas said Company has issued to said Chase a policy of insurance covering the liability, if any, of the said Chase on which the said Quinn seeks to recover in said suit, and

" Whereas by the terms of said policy the said Company has a right to compromise any suit against the said Chase, whether groundless or otherwise, and

" Whereas it appears that the liability to the said Quinn is the liability of said Standard Oil Company of New York:

" Now it is agreed that on the payment to the said Quinn by the said Company of twenty-five hundred (2500) dollars the said Quinn will discontinue the said action as against the said Jacob Chase, but only as against the said Jacob Chase, reserving all his rights in said action as against Standard Oil Company of New York.

" And the said Quinn hereby covenants that he will not on account of any of the causes of action set forth in said suit nor on account of any matter or thing which is the basis of any of said causes of action at any time hereafter bring suit against the said Jacob Chase.

" The said Quinn does not hereby nor in any manner whatsoever release the said Jacob Chase on account of any of said causes of action, any covenant herein on the part of the said Quinn in favor of the said Chase being merely a covenant not to sue.

" And the said Company agrees to pay forthwith to the said Quinn the sum of $2500.

" In Witness Whereof the said Quinn has caused these presents to be signed and sealed in his name and behalf by McClintock & Hoar, his attorneys, thereunto lawfully authorized and the said Company has caused the same to be

executed in its name and behalf by Green & Bennett, its attorneys, thereunto lawfully authorized the day and year first above written."

The exceptions must be overruled. Under the charge of the defendant that the plaintiff had received $2,500 in full satisfaction of the injury sustained by him, the plaintiff clearly had the right to show that the money paid by the insurance company was paid in consideration of his agreement under seal with the insurance company and that it was not paid to him solely on account of any alleged liability of Chase.

The agreement, Exhibit 13, is a bilateral instrument under seal; it is one of two duplicate originals and as such was admissible in evidence without accounting for the nonproduction of the other. *Peaks* v. *Cobb*, 192 Mass. 196. The contention of the defendant that it was inadmissible because it contains certain declaratory clauses harmful to the defendant is not sound, because all reasonable chance of harm was eliminated immediately by the instruction to the jury to disregard the statement: that " It isn't any evidence that it is so. Under this, Mr. Quinn got some money; the insurance company got out of the case. They can't establish liability on the Standard Oil Company, if one or both says they are not liable. That depends on what you say on the facts and on the law as given to you. No evidence on that. So you will ignore those upon that point, — those two clauses. Whether this is a covenant not to sue or whether it is a full settlement, it is going to you, and I am going to give you the principles of law, so far as I understand them, as stated by the Supreme Court."

The instrument, Exhibit 12, called a covenant not to sue, is an unilateral agreement under seal, and as such was not admissible in evidence as an original, or as a copy of the original without a legal excuse for the non-production of the original, which was delivered to and was in the possession of the insurance company. *Goodrich* v. *Weston*, 102 Mass. 362. Wigmore, Ev. §§ 1233–1234. The agreement provides for such covenant and it is not argued that in fact such an instrument was not drafted, executed and delivered

in accordance with the terms of the agreement. In this situation it seems that the admission of the duplicate copy of the " covenant not to sue " has not injuriously affected the substantial rights of the defendant. G. L. c. 231, § 132. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 383. The exception, although sustained, is not such error as requires a new trial.

During the trial one Bettigole testified in substance for the plaintiff, that he was going south on Main Street in an Oakland roadster which contained but one seat; that Chase was sitting on the left of the car driving; that Bernstein was in the middle and that he was on the right hand side nearest the Standard Oil truck; that as they were passing the truck it was on its right hand side of the street; that they were probably eight or ten feet away from it before they turned — before the truck turned — that he didn't remember whether they turned to the left of the truck or not; that they were right close to it when they got struck; that he could not say as they were passing the truck where they were with reference to the southbound track; that they were right close to the truck; that they were on the southbound track; that the only thing he noticed as they were passing the truck was that they got hit by the truck; that he did not see the truck turn before they were actually struck; that he did not see the truck make a turn to the left in the direction of the automobile; that the front wheels of the auto were doing the turning; that the back part of the auto was opposite those front wheels when the front wheels of the truck turned; that the distance between the auto and the truck as the auto was passing was ten feet, two and one half feet, four feet, and as finally stated, five feet; that when the auto was struck by the truck the auto was turned a little, just going to get away from the truck; that the blow of the truck was not a hard blow and didn't turn the auto. In cross-examination the witness, in reply to a question which is not in the record, said, " I did not say to anybody there that day in substance, ' I told Chase he cut in too quick, that some day he would catch it for turning in so quick on automobiles.' I might have said that at some other time to Chase when I

was riding with him." To the question: " Did you tell anybody that day in substance this: ' I told Chase that some day he would catch it for turning in so quick ahead of automobiles, and now he has caught it ' ? " the witness answered " I did not."

As material evidence and in contradiction of Bettigole's testimony last quoted, the defendant offered to prove by one Fogg that he (Fogg) heard " Bettigole say that he told Chase that some day he would get it for driving so close and now he had got it." The attorney for the defendant then said " But it is open to the same objection as the other. . . . Bettigole, you will remember says he didn't say it. These people say he did say it." The trial judge then asked, " What do you say he will say? " and the attorney for the defendant answered: " He will say that Bettigole said at the time, ' I told Chase he would get it some day for driving too close to automobiles, and now he has got it.' " Returning to the question and answer of Bettigole, it appears that Bettigole denied that on the day of the accident he told Chase " he cut in too quick, that some day he would catch it for turning in so quick on automobiles," although he admitted that he might have said it some other time to Chase when he was riding with him. Bettigole also denied on the same cross-examination that he told anybody that day in substance " I told Chase that some day he would catch it for turning in so quick ahead of automobiles, and now he has caught it." As applied to the entire examination of the witness, no substantial distinction in meaning can be drawn between the phrase " cut in too quick " or " turning in so quick ahead of automobiles " and the phrase " driving too close to automobiles." The fact which the defendant sought to develop by the testimony of witnesses and by the cross-examination of Bettigole was that its truck was forced out of its proper course against the vehicle of the plaintiff because Chase drove his automobile in passing the truck of the defendant " too close." If the jury should find that Bettigole in substance made any one of the declarations which he denied, the defendant might fairly argue that such' statement was inconsistent with his testimony above quoted

and had a legitimate tendency to impeach his credibility as a witness. *Robinson* v. *Old Colony Street Railway*, 189 Mass. 594, and cases cited. The evidence should have been admitted, and the exception must be sustained.

The motion of the defendant at the close of all the evidence for a directed verdict was denied rightly. Excluding all testimony for the defendant and having regard to the evidence in its aspect most favorable to the plaintiff, the jury would be warranted in finding that the plaintiff, Quinn, at the time of the accident, in the exercise of due care, was driving a wagon southerly on Main Street in the city of Springfield; that one Newton, driving a fully loaded Standard Oil tank truck weighing about six tons, was likewise driving on Main Street and at some time overtook Quinn; that Chase, driving an automobile came up on the left of the truck and was passing it; that the automobile was going from twelve to fifteen miles an hour, the truck eight or ten miles an hour; that the distance between the side of the truck and the automobile as it was passing the truck might have been any distance between two and ten feet; that when the front of the automobile had passed the front of the truck the front wheels of the truck were suddenly and negligently turned to the left hitting the rear mudguard of the automobile and that the truck in consequence and in immediate sequence collided with the wagon with the result that the plaintiff was thrown into the air and down on to the street, sustaining the injuries for which he seeks to recover damages.

The judge was right in refusing to instruct the jury as requested. Each of these requests is based manifestly upon an assumption of fact which the jury might not adopt. Where the evidence of fact is conflicting, or different inferences of fact may be drawn properly from undisputed evidence, the trial judge may, but is not required to, give instructions based upon some particular view of a portion of such evidence. *Shattuck* v. *Eldredge*, 173 Mass. 165, 168. *Hooper* v. *Cuneo*, 227 Mass. 37, 40. The remaining exceptions of the defendant have been considered and in our opinion they present no reversible error.

The exceptions were allowed by the judge who presided at the trial, after his resignation, and by another judge of the Superior Court. This procedure should not be followed. G. L. c. 231, § 115, provides a means for the allowance of exceptions in case of the disability of the presiding judge and the way therein indicated should be pursued without addition or variation.

*Exceptions sustained.*