AMOS L. TAYLOR & another *vs.* OSCAR S. CREELEY & another.

Middlesex. March 22, 1926. — August 9, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Unsound Mind. Evidence,* Of state of mind; Presumptions and burden of proof; Expert: opinion; Remoteness. *Practice, Civil,* Conduct of trial. *Witness,* Expert.

The disposition of a motion, made by the petitioner for proof of a will during the trial before a judge in the Superior Court of an issue as to the unsoundness of mind of the alleged testator, that a mistrial be declared because of certain articles in newspapers misrepresenting the evidence at the trial, was a matter within the discretion of the trial judge; and, where it did not appear that any juror had read the articles and the judge stated to the jury that from then on he advised the jury "not to read any accounts of this case in the newspapers . . . but try to concentrate and decide this case justly and honestly between the parties on the law and evidence as you hear it in court and only as you hear it here," it cannot be said as a matter of law that the judge's discretion was exercised wrongly in denying the motion.

If a hypothetical question, put to an expert witness at the trial of an issue as to the soundness of mind of an alleged testator, omitted in its recital of the facts assumed as a basis for the opinion to be expressed by the witness certain facts which were admitted to be true by the party putting the question and which, if included in the question, well might lead to a different answer, the question properly may be excluded by the trial judge; but if the judge, subject to exception by the adverse party, permits the question to be put and the excepting party does not thereafter request that the answer be struck out or that the jury be instructed to

disregard it, or that they be instructed that no weight was to be given to the answer if they found on the evidence other facts which were not included in the question and which in their judgment were proper to be given consideration in reaching a sound opinion on the testator's mental condition at the moment of the execution of the will, it cannot be said that there was any abuse on the part of the judge of the discretionary power resting in him in dealing with questions of that character.

At the trial of an issue, whether an alleged testator was of sound mind when he executed his will, where there has been testimony as to a well established arteriosclerosis, it was error to permit a witness, who, the judge had ruled, was not qualified as an expert in mental diseases, to express an opinion on senile dementia.

There being evidence at the trial of the issue above described that the alleged testator had neglected the care of his person, it was not reversible error to admit evidence that for several years before the execution of the will, when his house was in the control of a housekeeper, who was a devisee under the will, the condition of the kitchen and first floor of the house was bad, "that the water was leaking and things were frozen up, that the ceiling was as black as the stove, that the stove was rusty and never cleaned, and that the kitchen floor and the kitchen table were washed monthly with a broom."

It was error at the trial of the issue above described to permit a devisee who was the decedent's housekeeper during some years preceding the date of the execution of the will, after she had testified in cross-examination by the respondents, without objection by the petitioner, as to financial arrangements which had been made between her and the decedent, to be further asked in cross-examination and to be compelled to answer, subject to exceptions by the petitioner, whether she remembered how much money she had on a day two years after the will was executed, and what her sources of income were during her employment by the testator up to that date, such evidence not being competent upon the question of the testator's mental capacity when he made his will, nor upon credibility or bias of the witness.

Under Common Law Rule 44 of the Superior Court (1923), a request for a ruling at the trial above described, "Upon all the evidence in this case the jury is instructed as a matter of law to answer the question propounded to them in the affirmative," properly was refused.

A person of pathologically unsound mind may possess testamentary capacity.

A judge presiding at a trial cannot be required to give requests for rulings or instructions to the jury which would in effect require him to single out particular matters and witnesses and to comment upon them.

At the trial above described, there was evidence that the alleged testator had testamentary capacity and there was no evidence of delusions affecting the disposition of his property. The contestants relied on evidence of many acts of temper, irritation, momentary feebleness, lapses of memory, failure of recognition, carelessness in dress and neglect of person, irreconcilable ill feeling toward a son who could have been found to have questioned the father's chastity, and the opinion

of medical experts, based upon a hypothetical question which omitted many important facts treated as true throughout the trial, that the man characterized by the question was not of sound mind.  The petitioner moved that the jury be ordered to answer that the testator was of sound mind at the time when he executed his will.  The motion was denied.  The jury answered the issue in the negative.  *Held,* that

(1) The only question was, Did the alleged testator possess testamentary capacity at the time when he executed his will;

(2) The presumption of sanity was to be weighed with the other evidence;

(3) The motion that the issue be ordered answered in the affirmative should have been granted.

PETITION, filed in the Probate Court for the county of Middlesex on August 4, 1924, for proof of the will of Thomas L. Creeley, late of Belmont, in which the petitioner Taylor was named as executor.  A motion by Harriet G. Cummings, a devisee under the will, to be permitted to intervene as petitioner was allowed.

In the Probate Court, the following issue was framed for trial in the Superior Court: "Was said Thomas L. Creeley of sound mind at the time of the execution of the instrument which is now propounded as his last will?"

In the Superior Court, there was a trial before *Lourie, J.,* occupying practically four weeks.  On the second day of the trial, certain newspaper articles were called to the attention of the judge and a motion was made that a mistrial be declared because of the influence that any or all of them might have exerted upon the minds of the jury.  The motion was denied, subject to exceptions by the petitioners, and the judge made the following statement to the jury:

"There have appeared some newspaper articles concerning this case which, in my opinion, misstate and do not give a truthful account of some of the issues involved here.  I want to caution you . . . against drawing any inferences or allowing yourselves to be influenced in any way, manner or form by any articles which may have appeared in any newspapers, or any article which may appear from now on until the close of the trial, and because of these articles that have appeared I want to state to you the issue before you and which you are called upon to determine.

"The issue is one and not two or more. There is no issue in this case to be tried as to whether Mr. Creeley, the testator who made this will, was unduly influenced in any way by Amos L. Taylor, the executor of this will, or by anyone else. That is not the question you are trying. The only question you are trying is this. Was Thomas Creeley, the testator of this will, the man who made this will, and whose will is being contested now, was he of sound mind? As to what sound mind means in law I will instruct you at the proper time. You are now considering the evidence as it is going before you. The will which is in evidence, and it speaks for itself, and it will be before you to consider when you are in your jury room, will tell you who are the beneficiaries under it, and notwithstanding any statements that may have appeared or may appear in the newspapers as to who is a beneficiary under that will, you will please disregard them and try this case on the evidence that you hear and the law that is laid down to you by the court, and as I will instruct you at the proper time and not because of anything that you may hear or read outside.

"And I would advise you, gentlemen, from now on not to read any accounts of this case in the newspapers as they may lead to some confusion in your minds, but try to concentrate and decide this case justly and honestly between the parties on the law and evidence as you hear it in court and only as you hear it here."

The witness Scarfo, referred to in the paragraph numbered 4 of the opinion, subject to exception by the petitioners, was permitted to testify that after Harriet G. Cummings came to act as housekeeper for the decedent in 1911 and from then until the making of the will, the condition of the kitchen and other rooms on the first floor of the house was bad, "that the water was leaking and things were frozen up, that the ceiling was black as the stove, that the stove was rusty and never cleaned, and that the kitchen floor and the kitchen table were washed monthly with a broom."

The alleged will was executed on January 26, 1915. The judge ruled that the examination of witnesses, "as to the period within which evidence of facts bearing on testa-

mentary capacity could be shown," should be limited to the period between 1903 and January 26, 1917.

Harriet G. Cummings, having testified in cross-examination without objection by the petitioners as to the financial arrangements which had been made between her and the alleged testator, was then asked in further cross-examination and was compelled to answer, subject to exception by the petitioners, whether she remembered how much money she had on January 26, 1917, and what her sources of income were between February, 1911, and January 26, 1917.

Other material evidence is described in the opinion.

At the close of the evidence, the petitioners asked for the following rulings, among others:

"16. A trustee has no beneficial interest under a will as such."

"25. A power to sell real estate without first applying to the Probate Court for permission is well recognized by the law.

"26. The provision in this will that the 'purchaser need not look to the application of the purchase money' does not excuse or protect the executor or trustee in any way from being responsible for the proper performance of his duties."

"29. It is allowable under the laws of Massachusetts to make a provision that the income of a trust shall be held for the benefit of the beneficiary, that he can not assign it or sell it, that his creditors can not attach it or take it in bankruptcy, and that in order to protect it his trustee may hold back its payment.

"30. Such a trust is not against public policy and in itself is not an irrational way of disposing of property."

"39. Upon all the evidence in this case the jury is instructed as a matter of law to answer the question propounded to them in the affirmative."

The petitioners also moved that the judge order the jury to answer the issue in the affirmative.

The rulings asked for were refused and the motion was denied. The jury answered the issue in the negative and the petitioners alleged exceptions.

*A. P. Stone,* (*R. H. Willard* with him,) for the petitioners.

*R. J. White* & *J. H. Vahey,* (*P. Mansfield* with them,) for the respondents.

WAIT, J. After a verdict of a jury finding that Thomas L. Creeley was not of sound mind when he executed his last will, the petitioners for the probate of the will present exceptions saved in the course of the trial.

1. Whether the case should have been taken from the jury in consequence of the appearance of three newspaper articles published in the early days of the trial was a matter for the discretion of the judge presiding. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16. *Commonwealth* v. *Berley*, 254 Mass. 556. Unless clearly wrong, his determination will not be disturbed. There is no evidence that any juror had read the articles. They were not truthful statements of the issues of the case; and they lead easily to a false estimate of the relation of Mr. Taylor to the property of the estate. If any juror read them and gave them credence, they would seriously prejudice the petitioners.

The judge may have been justified in concluding, nevertheless, that they were not shown to have been prejudicial. He could have been more emphatic in dealing with the matter, and have instructed the jury not to read any accounts of the trial and not to allow any one to speak to them of the case except in the court room and in the proceedings of the trial. The parties are entitled to know all that is brought to the attention of the jurors bearing upon the trial which is in progress. They cannot have such knowledge if, during the trial, jurors are permitted to read description and comment in newspaper articles. The judge could not well comment to the jury upon what was said in the articles. So to do would be, perhaps, to bring to the knowledge of the jury matter of which they knew nothing. Consequently, he was justified in refusing to make any statement at that time in regard to any interest of Mr. Taylor. We are unable to sustain this exception.

2. The hypothetical question to the experts of the contestants was consonant with our trial practice. *Anderson* v. *Albertstamm*, 176 Mass. 87.

The question stated and assumed as true only the facts consonant with the answer desired, and it omitted other facts which were practically admitted by the contestants

and which, if stated, might well have led to a different answer. It was prejudicial to the proponents of the will. There would have been no error in excluding it. The jury should have been instructed that the answer should be given no weight as evidence of the mental condition of the testator at the date of the execution of the will unless they found all the facts therein assumed to be true; and that only those facts were true. The first part of such an instruction was given, but the last part was omitted. It is manifest that the man pictured by the question was not the man described by all the testimony, and that the expert who could honestly say that the man so pictured was not of sound mind, might have great difficulty in declaring the man disclosed by all the evidence to be unsound in mind.

It is impossible to state in a general rule all the elements of a legitimate hypothetical question. Circumstances vary so greatly and so widely that what is proper in one case is improper in another. The law leaves to the presiding judge the power to decide what to admit and what to exclude. *Commonwealth* v. *Johnson*, 188 Mass. 382. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527. In the state of the evidence when the question was put, there was no abuse of power in admitting it. The bill of exceptions does not disclose that any request was made that the answer be excluded and the evidence be struck out; nor any request that the jury be instructed to disregard it, or that they be instructed that no weight was to be given the answer if they found in the evidence other facts which were not included in the question and which in their judgment were properly to be given consideration in reaching a sound opinion on the testator's mental condition at the moment of the execution of the will. The hypothetical question put by the proponents to the experts called by them is open to the same objection. It may be that they preferred to take their chances upon the jurors' reaction to both questions, rather than to have both struck out as might have happened had they made the appropriate motions. As no abuse of discretion is made out, we must overrule this exception.

3. The questions to the witness Goodall with his answers

were admitted improperly. The trial judge ruled that he was not qualified as an expert in mental diseases, yet he was allowed to express an opinion on senile dementia, a mental disease. The testimony was not unimportant, since it might base an argument that senile dementia had developed from the well established arteriosclerosis, and had reached the point of mental unsoundness. This exception must be sustained. *Hastings* v. *Rider*, 99 Mass. 622, 624. *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 124.

4. The testimony of the witness Scarfo, admitted against the exception of the petitioners, described conditions in the household of the testator for which he might be thought to be responsible. In connection with testimony of neglect of his person, this evidence was not without significance. It could have been excluded as remote, but we cannot say the judge erred in allowing the jury to consider it. *Lane* v. *Moore*, 151 Mass. 87.

5. We are unable to see how the testimony of Mrs. Cummings to which exception was saved had any bearing upon the mental condition of the testator in January, 1915, or upon any matter of credibility or bias. No question of undue influence exerted by this witness was before the jury. The evidence was admitted improperly.

6. Exceptions were saved to the refusal by the judge to give requests numbered 13, 16, 25, 26, 29, 30 and 39 of the requests for instructions presented to him. The exception is waived as to request 13. The judge was not bound to give these requests. He cannot be compelled to single out particular matters and witnesses and to comment upon them. *Shattuck* v. *Eldredge*, 173 Mass. 165, 168. *Quinn* v. *Standard Oil Co. of New York*, 249 Mass. 194, 204. The applicable law was sufficiently stated to the jury. Request 39 is really a motion for a directed verdict and could not be given consistently with Common Law Rule 44 of the Superior Court (1923).

7. There remains only the exception to the refusal to direct that the jurors make answer "Yes" to the issue presented.

There was contradictory evidence before the jury with regard to the facts. What witnesses were to be believed

was for the jury.  The jury were asked: "Was the testator of sound mind on" a certain date?  The real issue is: Did the testator possess testamentary capacity on the date in question?  A person of pathologically unsound mind may possess testamentary capacity.  *May* v. *Bradlee*, 127 Mass. 414.  The facts to be ascertained are whether the testator "was able to understand and carry in his mind in a general way the nature and situation of his property and his relations to those persons who are about him; to those who would naturally have some claim to his remembrance, to those persons in whom and those things in which he has been mostly interested.  He must have been capable of understanding those things and the nature of the act he was doing, and the relation in which he stood to those having some natural claims on his bounty, and to those who ought to be in his mind on such an occasion, and free from any delusion which was the effect of disease and which might lead him to dispose of his property otherwise than he would have done if he had known and understood correctly what he was doing."  *Whitney* v. *Twombly*, 136 Mass. 145, 147.

There was evidence that he possessed such capacity.  The will itself shows that he understood about his property, his relations to son, grandchildren, sister and those with natural claims upon him.  Everything he had was given for their benefit, omitting only direct benefit to the son toward whom his animosity was inveterate.  There was no evidence of delusions affecting the disposition of the property.  There was a presumption of sanity to be weighed with the evidence in testamentary cases.  *Fulton* v. *Umbehend*, 182 Mass. 487.  *Clifford* v. *Taylor*, 204 Mass. 358, 361.  See *McLoughlin* v. *Sheehan*, 250 Mass. 132, 137.

Against this was evidence of many acts of temper, irritation, momentary feebleness, lapses of memory, failure of recognition, carelessness in dress and neglect of person, irreconcilable ill feeling toward a son who could have been found to have questioned the father's chastity, and the opinion of medical experts based upon a hypothetical question which omitted many important facts treated as true throughout the trial, that the man characterized by the

question was not of sound mind. None of this shows lack of testamentary capacity. We feel constrained to hold that there was no sufficient evidence for the jury in support of lack of such capacity; and that the judge should have granted the petitioner's motion and directed the jury to answer "Yes."

*Exceptions sustained.*