COMMONWEALTH *vs.* WILLIAM JOSEPH CREHAN, JUNIOR
(and three companion cases[1]).

Middlesex.     December 3, 1962. — March 26, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Fair trial, Newspaper article, Judicial discretion, New
trial.   *Evidence,* Judicial notice.

This court took judicial notice in a criminal case that certain newspapers
were of general circulation in a metropolitan area where the trial was
held and elsewhere in the county.   [611]

Defendants convicted of robbery and related crimes were not afforded a
fair trial and must be granted a new trial where it appeared that at the
beginning of the trial the judge in his lobby cautioned newspaper re-
porters "not to publish any of the criminal records of the defendants"
since that "might be grounds for a mistrial," that the next day, when
the trial was suspended and the jurors had separated, newspapers of
general circulation published articles stating that the trial of the de-
fendants, naming them, had begun and that the judge had "intimated
[to the reporters] that an attempt would be made to obtain a mistrial
if any criminal record were printed in connection with the case" and
had "ordered [the] reporters . . . to make no mention . . . of criminal
records" of the defendants, that before resuming trial on the day fol-
lowing publication of the articles the judge denied a motion for a mis-
trial grounded on their publication and a motion that he interrogate the
jurors to determine whether they had read the articles and, if so, what
impression they had got, that he then took no action to overcome the
possibility of prejudice from the violation of his instructions inherent
in the articles, that no criminal records were introduced at the trial,
that at no time was there an instruction by the judge addressed to the
articles, and that in his charge eight days after the publication he merely
stated that what the jury might have read in the newspapers was "not
evidence" and referred to a possible reporting of "that which . . .
[might] not have been the positive evidence as [it] appeared before the
jury."   [610–615]

INDICTMENTS found and returned on October 7, 1959, and
November 3, 1959.

[1] The companion cases are Commonwealth *vs.* Murdo F. Margeson, Common-
wealth *vs.* Kathleen Dawson, and Commonwealth *vs.* William Joseph Crehan,
Junior.

The indictments were tried in the Superior Court before *Tomasello, J.*

*Helen Mejan* for the defendant Crehan.

*Manuel Katz* for the defendant Margeson.

*Wilbur G. Hollingsworth* for the defendant Dawson.

*Francis K. Monarski,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him) for the Commonwealth.

WHITTEMORE, J.   These are appeals under G. L. c. 278, §§ 33A–33G, as amended.   The defendants, in November, 1961, at Cambridge, were convicted in the Superior Court sitting in Middlesex County, and sentenced for crimes as follows: Crehan and Margeson: assault with intent to rob and robbery while armed, masked and disguised; Crehan: theft of an automobile; Dawson: accessory after the fact to an armed robbery by Crehan.[2]

The trial began on November 6, 1961, and was adjourned to November 8, 1961.   Before trial resumed, the defendants presented and took exception to the denial, after hearing, of two motions separately made for each defendant: (1) A motion for a mistrial because of the publication on November 7, 1961, of two newspaper articles set out in a supporting affidavit of counsel.   (2) A motion, following the denial of the first motion, that the trial judge interrogate the jurors as to whether they had read the articles, and, if so, had received the impression that any of the defendants had criminal records and, if so, whether that would affect their judgment.   The affidavits of counsel averred, inter alia: (1) On November 6, "the court cautioned representatives of the Boston newspapers not to publish any of the criminal records of the defendants, pointing out to them that the publication of any criminal record might be grounds for a mistrial"; (2) the Boston Herald, on November 7, 1961, published an article which included the following: "4 on Trial in Marlboro Bank Theft.   Three men and a woman went on trial yesterday . . . .   Before trial began,

---

[2] Walter M. Ayer was also convicted as an accessory but has not appealed.

. . . [the trial judge] called newsmen to his lobby and intimated that an attempt would be made to obtain a mistrial if any criminal record were printed in connection with the case. On trial are William J. Crehan Jr. . . . Murdo Margson [*sic*] . . . Walter M. Ayer . . . and Kathleen Dawson . . . .'' (3) On November 7, 1961, the Boston Traveler printed an article which included the following: "3 Men, Dancer Tried For Bank Heist. Three men and an attractive exotic dancer went on trial . . . yesterday . . . . Two of the men are charged with actual participation in the $7,000 holdup Oct. 6, 1959 . . . . They are . . . Crehan . . . and . . . Margeson . . . . Accused of being accessories after the robbery are . . . Dawson . . . and . . . Ayer . . . . Prior to the drawing of a jury . . . [the presiding judge] ordered reporters . . . to make no mention in ensuing stories of criminal records of any of the defendants. He said this order was issued at request of defense counsel, who intimated any such mention would become the basis for a mistrial . . . .''

None of the defendants testified and there was, therefore, no opportunity for the Commonwealth to introduce their criminal records, if any. We take judicial notice that the newspapers mentioned are of general circulation in the Boston metropolitan area, which includes Cambridge, and elsewhere in Middlesex County.

On November 14 and 15, 1961, in denying motions of the defendants Margeson and Crehan based on alleged incorrect reporting of evidence in other articles in another newspaper, the judge said in substance that it had been his plan from the first day to instruct the jury to disregard newspaper accounts.

The judge, in his charge on November 15, instructed the jury that the arguments are not evidence, that the testimony and exhibits are the only evidence upon which they might decide the case, that what he might say was not evidence and that what "you may have read in newspapers is not evidence either, because at times the reporter, being unscrupulous and violating the confidence of the court, may

relate in substance in the newspaper that which may not have been the positive evidence as [it] appeared before the jury.''

The articles of November 7 directly interfered with the judicial process. As their contents disclosed, and as should have been plain to the writers and all concerned, they were, in effect, violations of the judge's instruction reported therein. The violations, as will appear below, did precisely the harm which the instruction was designed to prevent; the articles which embodied them were a ''threat or menace to the integrity of the [jury] trial.'' *Craig* v. *Harney, Sheriff,* 331 U. S. 367, 377. No right of free speech and freedom of the press supported this conduct. It would have been equally serious if the instructions had been given, in the jury's absence, in the court room; that they were given in the lobby made clear that there was no basis for relying on the mistaken concept of a right to print everything that is said in open court. Judgments in contempt have been upheld for publishing articles having such effect even though there was no intent to ''pervert the course of justice'' and no violation of a judicial instruction. *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, 299–300. *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449, 453–454. See *Woodbury* v. *Commonwealth,* 295 Mass. 316, 319. Compare, as to comments upon matters pending before a judge, *Bridges* v. *California,* 314 U. S. 252; *Pennekamp* v. *Florida,* 328 U. S. 331; *Craig* v. *Harney, Sheriff,* 331 U. S. 367, 377. See also *Maryland* v. *Baltimore Radio Show, Inc.* 338 U. S. 912 (opinion of Frankfurter, J., on denial of cert.); 63 Harv. L. Rev. 840, 848–850; National Conference State Trial Judges, Proceedings at 5th Annual Meeting, August 3–5, 1962, Fair Trial v. Free Press, pp. 78–107, 53–54. We are, however, presently concerned only with the effect of these offences on the rights of the defendants to a fair trial.

Both articles, in view of the generality of their implications, must be judged as though they had expressly asserted that each defendant had a criminal record. We agree with the defendants that it is likely that some readers would in-

fer from the articles that the criminal records were serious and of a kind which would tend to prejudice a juror against the defendants.

As the jurors had separated and the poll sought was denied, we must assume that they had read the articles. We need not determine the rule to be applied in the absence of an effort by the defendants to ascertain whether the jury had read the articles. See *Taylor* v. *Creeley,* 257 Mass. 21, 23–24, 26; *Commonwealth* v. *Barker,* 311 Mass. 82, 87–88; *United States* v. *Weber,* 197 F. 2d 237, 239 (2d Cir.). Compare *Holt* v. *United States,* 218 U. S. 245, 251; *Briggs* v. *United States,* 221 F. 2d 636, 639 (6th Cir.); 63 Harv. L. Rev. 840, 847.

On this assumption some action by the judge was required to overcome the possibility of prejudice. The judge recognized this and, rejecting the argument for a mistrial, decided that immediate instructions were not required and that a general caution in the charge would be adequate.

It is our rule that jurors may be expected to follow instructions to disregard matters withdrawn from their consideration. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645. Much must be left to the judge's discretion. *Taylor* v. *Creeley,* 257 Mass. 21, 26. *Commonwealth* v. *Barker,* 311 Mass. 82, 88. *Commonwealth* v. *Theberge,* 330 Mass. 520, 529. 31 A. L. R. 2d 432, 433. The instructions must be "sufficiently strong to accomplish . . . [the] purpose" of counteracting the adverse effect of the withdrawn matter. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611 (improper argument by counsel). Accord, *London* v. *Bay State St. R.R.* 231 Mass. 480, 485–486 ("rigorous and emphatic action"); *Commonwealth* v. *Cabot,* 241 Mass. 131, 150 ("plain, unmistakable language"); *Stricker* v. *Scott,* 283 Mass. 12, 14–15; *Shea* v. *D. & N. Motor Transp. Co.* 316 Mass. 553, 555. See also *Allen* v. *Boston Elev. Ry.* 212 Mass. 191, 194, and cases cited (incompetent evidence); *Commonwealth* v. *Locke,* 338 Mass. 682, 689. For the view that instructions cannot overcome prejudicial effects see *Krulewitch* v. *United States,* 336 U. S. 440, 453 (concurring opinion, Jackson, J.).

No doubt the generality of the instruction stemmed from awareness that a pointed reference might itself do harm. See *Taylor* v. *Creeley*, 257 Mass. 21, 26. Postponing any instruction until the charge, however, risked an adverse effect in the interval. Compare *United States* v. *Pisano*, 193 F. 2d 355, 360–361 (7th Cir.) (judge immediately polled the jury and gave firm instructions which were repeated in the charge); *United States* v. *Postma*, 242 F. 2d 488, 495 (2d Cir.) (jury polled, immediate "forceful admonition," "subject-matter . . . not . . . mentioned"). The judge's words here were in terms addressed only to misreporting "the positive evidence as [it] appeared before the jury" and were inadequate eight days after the publication on November 7 as a means of overcoming the effect of the references on that day to criminal records which were not in evidence before the jury.

In the circumstances *Marshall* v. *United States*, 360 U. S. 310, is in point. There newspaper articles published during the trial reported prior convictions of the defendant and other prejudicial matter. The trial judge denied a motion for a mistrial, having found on inquiry that seven jurors had seen the articles or one of them, and that each felt no prejudice as a result. The Supreme Court said (p. 312): "The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. *Holt* v. *United States*, 218 U. S. 245, 251. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. . . . The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. . . . It may indeed be greater for it is then not tempered by protective procedures. In the exercise of our supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts . . . we think a new trial should be granted." See *Briggs* v. *United States*, 221 F. 2d 636, 638–640, and cases cited (6th Cir.).

We recognize that charges of specific crimes may reasonably be appraised as more prejudicial than a statement to the effect that the defendants have criminal records coupled with the implication that the crimes were of a serious nature.   But we are disinclined to draw such a distinction in this case.   A proper course would have been to examine the jurors forthwith.   We assume that even though that had disclosed some knowledge of the articles, it might also have indicated that the chance of prejudice could be overcome by appropriate instructions.   For cases where prompt instructions were given without polling the jury, see *Taylor* v. *Creeley,* 257 Mass. 21, 23–26; *United States* v. *Hirsch,* 74 F. 2d 215, 218–219 (2d Cir.); *United States* v. *Griffin,* 176 F. 2d 727, 731 (3d Cir.).   The issue is whether the "irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict."   *Commonwealth* v. *Roby,* 12 Pick. 496, 516.   In the circumstances of the absence of an inquiry and of an immediate instruction, and also of an instruction at any time addressed to these publications, essential prejudice must be assumed.   See *Commonwealth* v. *Stone,* 321 Mass. 471, 473–474.

There must, therefore, be a new trial.   It has been made necessary by those who acted contrary to the judge's mandate and presented him with a dilemma difficult, if not impossible, to resolve justly with due regard to the rights of the Commonwealth as well as those of the defendants.

*Judgments reversed.*