Hillsborough,
No. 5768.

## STATE *v.* ARTHUR RUMNEY.

Argued March 4, 1969.
Decided October 31, 1969.

*George S. Pappagianis,* Attorney General and *Norman E. D'Amours,* Assistant Attorney General (*Mr. D'Amours* orally), for the State.

*Alexander J. Kalinski* (by brief and orally), for the defendant.

DUNCAN, J. The defendant was convicted of the crime of armed robbery committed in Manchester on September 3, 1965. Trial was by jury before *Morris,* J. At the close of the evidence the defendant moved for a directed verdict of acquittal upon the ground that the only evidence connecting him with the crime was the testimony of an alleged accomplice which was uncorroborated and unworthy of belief, and upon the further ground that his conviction based upon such evidence would violate his "federal constitutional rights." To the denial of this motion, and of his motion for a mistrial previously made the defendant duly excepted. The questions of law presented by these and other exceptions taken at the trial were reserved and transferred by the Presiding Justice.

It is not disputed that the only direct evidence of the defendant's participation in the robbery came from the testimony of the witness Catudal, who testified in detail to the planning and execution of the robbery. The robbery occurred at approximately

2:30 P.M. when John M. Sullivan was "held up" by two armed men in a parking lot near his store on South Main Street in Manchester, and robbed of over $4,000. According to the evidence, the robbers placed the money in a canvas bag, and escaped by running through a swampy woods area behind the parking lot to a get-away car furnished by the defendant, in which the witness Catudal was waiting. According to Catudal's testimony, the trio then proceeded to the home of a Mrs. Brady in Manchester, where they remained from 3:00 to 4:00 P.M., and then went their separate ways.

While the testimony of Catudal that the defendant had been arrested in Auburn on his way to Manchester that morning, for operating the same automobile without a license, and that the defendant was at Mrs. Brady's home on the afternoon of the crime was corroborated by other witnesses for the State, Catudal's testimony that the defendant participated in the robbery was not. The defendant did not testify, but called a witness who testified that he had accompanied the defendant to Rockingham Park to attend the races on the afternoon of September 3, 1965, but could not say what time he met the defendant in Manchester that afternoon.

It is established law in this jurisdiction that the uncorroborated testimony of an alleged accomplice is competent evidence upon which to found a verdict, in the absence of statutory provision to the contrary. *State* v. *Desilets,* 96 N. H. 245; *State* v. *Keegan,* 106 N. H. 152, 154. The defendant recognizes that this is so, and that no statute prevents its application in this case. He points out however that such evidence is universally received with caution, and that it has been said that it cannot be accepted by a jury if it appears on its face to be "bald perjury, preposterous, or self-contradictory." 30 Am. Jur. 2d, Evidence, s. 1151. See *Sparkman* v. *State,* 27 Wis. 2d 92. He argues that the testimony of Catudal in this case falls within this category.

The record does not support the argument. Contradiction of details in Catudal's testimony by the testimony of other witnesses does not constitute self-contradiction. The testimony of the alleged accomplice does not impress us as "preposterous," even though he testified that the defendant participated in the robbery as planned, after being arrested outside of Manchester that morning, and that the same automobile was used in the robbery and parked within view of the public streets in Manchester for a time after

the crime was committed. Such conduct on the part of the defendant might be thought to have been bold and ill-advised but testimony that it occurred does not for that reason necessarily require disbelief. Nothing in the record establishes that Catudal's testimony was "bald perjury." Although there were discrepancies between the testimony of Catudal and that of other witnesses concerning the conduct of the robbers, their wearing apparel, and the appearance of the canvas bag later seen at Mrs. Brady's house, these were not of such a character as to establish perjury on Catudal's part. We are furnished with no authority supporting the argument that the verdict violates the defendant's rights under the Constitution of the United States because the testimony of the accomplice was uncorroborated. The decided cases indicate the federal rule to be otherwise. *United States* v. *Caci,* 401 F. 2d 664, 668 (2d Cir., 1968) and cases cited; *United States* v. *Haynes,* 403 F. 2d 54 (6th Cir., 1968). The motion for a directed verdict was properly denied.

On the fourth day of the trial, which was held in Nashua, the defendant's counsel called to the attention of the Court an item which had appeared the day before in a daily newspaper of statewide circulation published in Manchester. This item, of single column width on the fourteenth page of the paper, was headed "Convict To Be Tried On Robbery Charge" and reported briefly that the defendant was "brought from State Prison" to the Superior Court for trial "yesterday." On its own motion, the Court thereupon instructed the jury to recall preliminary instructions given at the commencement of the trial that the case should be decided on the evidence presented in the courtroom and that newspaper and other outside reports should be disregarded. Alluding to "newspaper articles" called to the Court's attention the Court, without describing them, inquired "of each" juror whether he could disregard anything he might have read, and whether he had formed an opinion or was sensible of any prejudice because of what he might have read. Cf. *Commonwealth* v. *Crehan,* 345 Mass. 609. No juror indicated that he was sensible of prejudice or that he had read the article.

It is established law in this jurisdiction that evidence of the prior conviction of a defendant is inadmissible to prove commission of a later offense. *State* v. *Cote,* 108 N. H. 290, 294. Thus the information conveyed by the publication, that the defendant was a convict brought from State Prison, was not competent

to be considered by the jury. However, for this court to hold that the defendant was deprived of a fair trial because of the publication, it would be necessary for it to assume in the face of the contrary indications in the record that the jurors were "exposed to the publicity and were prejudiced thereby." *Welch* v. *United States,* 371 F. 2d 287, 291 (10th Cir., 1966).

The jury was instructed on three different occasions to ignore anything heard outside of the courtroom, and to decide the case upon the evidence presented at the trial. In the circumstances, it cannot be held that the trial was prejudiced by the publication in question so as to require a mistrial. *Frazier* v. *Cupp,* 394 U. S. 731, 735-736; *State* v. *Coolidge,* 109 N. H. 403. See Standards Relating to Fair Trial and Free Press, *s.* 3.5 (f), 54 A.B.A. Jour. 343, (Approved Draft, 1968).

*Exceptions overruled.*

LAMPRON, J., did not sit; the others concurred.