**UNITED STATES of America,
Plaintiff,**

**v.**

**Herbert SPERLING et al., Defendants.**

**No. 73 Cr. 441.**

United States District Court,
S. D. New York.

Aug. 23, 1973.

Paul J. Curran, U. S. Atty., for the S. D. New York by Franklin P. Velie, Asst. U. S. Atty., for plaintiff.

Raymond E. LaPorte, Tampa, Fla., for defendant, Sperling.

## OPINION

POLLACK, District Judge.

Defendant Herbert Sperling has moved for a new trial citing as error over fifty rulings or decisions made by this Court during the pretrial and trial phases of this case. Sperling, in effect, reasserts and renews most—if not all—of his earlier objections and exceptions.

Each ground advanced has been considered and is found wanting and the motion for a new trial is denied in all respects. The Court finds that "a new trial would be most unlikely to produce a different result." United States v. Sposato, 446 F.2d 779, 782 (2d Cir. 1971).

In order to clarify the points involved in their proper context, the Court will broadly comment on some aspects of the assignments of error in the moving papers.

### I. *Conduct of the trial.*

Sperling was one of 28 defendants named in a sealed twelve count narcotics Indictment, 73 Cr. 441, handed down on May 11, 1973, which superseded Indictment 73 Cr. 330 of April 13, 1973. Of the 28 named as defendants eight were and remain fugitives; two pleaded guilty; and eighteen went to trial on June 15, 1973. During the course of the trial, severances were granted to defendants Cuccinello and Pacelli as further described, *infra*; two defendants were acquitted by the Court at the close of the government's case, Fed.R.Cr.P. 29; and, on July 12, 1973, the jury convicted eleven defendants on all counts charged, including Sperling, and acquitted three others.

Due to the size and complexity of this case and to the number of defendants in custody following the original indictment, the Court undertook various steps to expedite the pretrial and trial proceedings and to minimize the chance that any prejudicial occurrence would taint the fair conduct of the proceedings.

Accordingly, on April 25, 1973 —within two weeks of the filing of the original indictment—a pretrial hearing was conducted, at which time the ground rules of discovery were established. The parties were urged to get in communication with each other promptly and the government was directed to provide (without formal paper request) on an expedited basis access to or copies of all documents, tapes, and information to

which the defendants were entitled under the prevailing rules of this District. Any dispute between a defendant and the government was to be presented on a forthwith basis; the Court made every effort to hear the dispute without requirement of formal papers and to resolve it without delay. Although defendant Sperling now complains of the rulings on pretrial discovery motions and implies that everything was denied, the fact is that having been provided before the ruling with all the information and documents the government was required to produce, his applications · became moot as to such data and were denied only as to the balance.

On the eve of trial, counsel for the defendants were given certain ground rules for the trial to insure an orderly and efficient proceeding. Most important, counsel were instructed, should they have cause to object, simply to state the objection in legal terms without further argument, unless otherwise directed by the Court. It was announced that an objection made by one defendant would automatically inure to the benefit of all other defendants as to whom it might be applicable and need not be voiced by them. As the trial progressed, a system was implemented by which the articulation of objections could be expanded in written statements to the Court and the plethora of motions which were made for severance, continuance, or mistrial as well as offers of proof were so made. These were duly marked as Court's exhibits and were ruled upon at the times made. There were submitted in excess of 140 of these Court exhibits. These procedures enabled the defendants to avoid any disfavor with the jury due to the prolixity and frequency of their objections. Had these been voiced instead of submitted in writing the possible prejudice to defendants from their frequency, content and denial is obvious. Furthermore, not every defendant agreed with what counsel for others were doing. The writings minimized the possibility that the joinder of defendants would become prejudicial because of the conduct of the defense by some counsel. These procedures further minimized undue colloquy between counsel and the Court, and the necessity of moving the jury and the alternates in and out of the courtroom, and the likelihood that prejudicial comments would be made in the presence of the jury. Although a few occasions arose when particular defendants committed outbursts and made comments in and. out of the presence of the jury which should not have been made, (see, e. g., some of the comments of defendant Sperling at 2630, 2638, 2827, 3114, 3195, 3300, 3495, 3538, 3843, 4043, 4092) on the whole the trial proceeded with proper courtroom decorum. The record confirms that the parties were allowed to make any appropriate objection while at the same time preserving the proper civility of the proceedings.

## II.  *The Pacelli testimony.*

On July 9, 1973, near the close of the trial, nine defendants requested the opportunity to call as a witness on their behalf Vincent Pacelli, Jr., who was then a defendant on trial herein. Pacelli had indicated he would not take the stand on his own behalf while he remained on trial in view of certain criminal convictions which would be revealed through such testimony. A hearing was held at the close of the trial day on July 6, out of the presence of the jury, pursuant to United States v. Sanchez, 459 F.2d 100 (2d Cir. 1972) to determine Pacelli's availability as a witness. The nine defendants moved for a severance when Pacelli indicated he would not testify at this trial where he was a defendant. The Court gave serious consideration to the possibility of initially submitting the case of Pacelli to the jury; and following determination of his case, Pacelli would be allowed to testify for the others, and after such testimony, the balance of the case would go to the jury as to the others. Such a procedure, while admittedly novel, might alleviate the problem in multiple defendant trials which arises when a defendant expresses a desire to summon

accused accomplices who are simultaneously on trial. *See generally,* Wright, Federal Practice and Procedure § 225–226. That procedure, however, is replete with practical and conceptual difficulties, and, in the face of opposition from several defendants, the Court concluded that such a procedure should not be attempted in this case.

Instead, with the consent of Pacelli after advice to him from his counsel, Pacelli agreed to testify on behalf of those who sought his testimony, following which a mistrial and severance would be granted as to Pacelli; no immunity was requested by Pacelli or by the government for Pacelli, nor was any granted.

When Pacelli's theoretical availability became real, the firm resolve of six of the defendants to have Pacelli's testimonial assistance melted and the expressed desire therefor was recalled by them. Only three defendants expressly desired to and did call Pacelli as their witness, and defendant Sperling, who was not one of them, sought exculpatory testimony when he through his counsel undertook to and did examine the witness Pacelli.

■ Pacelli was cross-examined on his prior convictions by the government to impeach his attempted exoneration of every defendant from any narcotics association with him and from any narcotics involvement on his own part. These included a conviction for violation of the federal narcotics law (affirmed on appeal); and his violation of the civil rights of a witness in that narcotics case by causing her death and obstruction of justice in that connection. The government elicited the fact that the latter conviction is on appeal. Counsel for Sperling elicited the witness' assurance that he hoped to succeed on a pending appeal in overturning that conviction.

The Court, in allowing that impeachment, relied on the case of United States v. Owens, 271 F.2d 425 (2d Cir. 1959), cert. denied, 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed.2d 863 (1961) and on proposed federal rule of evidence 609(e), along with the authorities cited in the commentary thereto. The Court rejected as inapplicable to the facts herein United States v. Semensohn, 421 F.2d 1206 (2d Cir. 1970). On July 6, 1973 the Second Circuit in United States v. Soles, 482 F. 2d 105, confirmed as correct the legal principle applied by this Court in allowing such cross-examination.

While the pendency of the appeal does not shield the prior conviction from inclusion in cross-examination, the character of the conviction of Pacelli makes it particularly appropriate for impeachment. Pacelli was convicted, in effect, for killing a prospective witness who was to testify against him in the next few days in a narcotics prosecution. That act could allow the jury to consider whether Pacelli would have sufficient respect for the judicial process so as to tell the truth. In cross-examining on this conviction and in commenting on it in summation, the prosecutor revealed admirable restraint and successfully minimized the prejudicial impact that might have been created by more detailed examination.

The Court finds that item 14 in defendant's motion is lacking in merit in fact and in law.

### III. *Electronic Surveillance.*

The government planned to introduce conversations intercepted, under Court order, through wire surveillance on the phone of defendant Cuccinello and conversation(s) intercepted through oral surveillance in the area of Ballentine's Barber Shop in Manhattan.

During the course of the pretrial and trial proceedings, the Court tried to conduct a minimization hearing at the request of defendant Cuccinello with regard to the wiretap. During the course of these hearings, Cuccinello raised the question of whether the entire tap was tainted due to the lack of legal evidence providing probable cause for the wiretap order. Before the record was completed or the Court could rule on these questions, defendant Cuccinello, voicing a fa-

miliar refrain that he was denied a fair hearing, moved for a continuance or severance. On consent of the government, the Court granted a severance, and none of the wiretap evidence was offered by the government.

▮ The government did offer, and the Court allowed, one conversation overheard by an electronic "bug". Prior to its admission, an audibility hearing was conducted as was a minimization hearing. There is no question but that the government agents conducting this interception "on the whole . . . have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion." United States v. Tortorello, 480 F.2d 764 (2d Cir. 1973). In allowing the conversation to be played and in allowing the jury to examine during one of the three playings of the tape a transcript said to accurately represent the conversation, the Court adhered to the procedures set out in United States v. Bryant, 482 F.2d 105 (2d Cir. 1973); United States v. Carson, 464 F.2d 424 (2d Cir. 1972).

IV. *Jurors viewing of Defendants in Custody of Marshals.*

During the trial and before the opening of Court, a juror happened to be on Pearl Street watching a building under construction when the Marshal's wagon rolled up to the side entrance of the Court building, on Pearl Street, and discharged several of the defendants who were in custody and were handcuffed and guarded by armed Marshals. That juror told another juror about the incident. At the instance of defendants and after a voir dire of the jurors involved the Court dismissed the particular juror from further duty in the case because he had violated the Court's instructions not to discuss the case or any aspect of it with any other juror until the case was concluded. Although the Court acted as defendants requested, Sperling adds the incident to his catalogue of trial errors.

▮ The chance observance by a juror of a defendant handcuffed and guarded is not grounds for a mistrial or a new trial. United States v. Figueroa-Espinoza, 454 F.2d 590 (9th Cir. 1972); United States v. Acosta-Garcia, 448 F.2d 395 (9th Cir. 1971); United States v. Hamilton, 444 F.2d 81 (5th Cir. 1971); United States v. Leach, 429 F.2d 956 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); United States v. Larkin, 417 F.2d 617 (1st Cir. 1969), cert. denied, 397 U.S. 1027, 90 S.Ct. 1271, 25 L.Ed.2d 536 (1970); McCoy v. Wainwright, 396 F.2d 818 (5th Cir. 1968); Cwach v. United States, 212 F.2d 520 (8th Cir. 1954). No conceivable prejudice to defendant Sperling occurred; for in his testimony he volunteered his arrest and his confinement since then. The circumstance was accidental, and could not be avoided since no other entry to the building was available except the front door which was intelligently avoided by Marshals.

The Court took the precaution on this occasion of speaking with each juror and alternate in voir dire and of repeating its general cautionary instructions to the jury panel. This ground assigned for a new trial is rejected as frivolous.

V. *Requests for Voir Dire and for Instructions to Jury.*

▮ Defendant contends that the Court erred in denying his requests for voir dire questions during the selection of the jury and in denying his requests for instructions to the jury at the close of the case. The record will clearly indicate that all requests of defendant Sperling were embraced in the charge, some in haec verba, except those which do not represent law in this Circuit. The Court's own voir dire questions on the impanelling sufficiently covered relevant areas and the jury was accepted by all parties as satisfactory.

**914**

## VI. *Letters to France.*

■ The defendant suggests that letters to France should not have been allowed to go before the jury. In fact, the objection to the introduction of the documents was sustained. Thereafter, without any objection on the part of any defendant, government counsel made inquiries on cross-examination of defendant Sperling who was on the witness stand concerning the facts asserted in his letter-writing. Sperling readily answered the inquiries and no one moved to strike those answers.

## VII. *Evidence taken subject to connection.*

■ Evidence was received subject to connection at pp. 530, 531, 716, 751–2, 794, 822, 823, 824, 881, 926, 959, 981, 983, 1453, 1454, 1456, 1491, 1492, 1494, 1520, 1524, 1569, 1570, 1577, 1582, 1584, 1588, 1593, 1595, 1610, 1717, 1721, 1794, 1823, 1824, 2088, 2089, 2117, 2119, 2120, 2138, 2152, 2158, 2202, 2305, 2306, 2307, 2318, 2319, 2320, 2334, 2730, 2791 and 2792. The Court reviewed each instance, and where a connection was not made, the evidence was stricken. With regard to defendant Sam Kaplan, the failure to connect evidence as to him resulted in a judgment of acquittal on his behalf, Fed.R.Crim.P. 29.

## VIII. *Other Grounds.*

The spate of other grounds asserted by defendant for a new trial relate to minute details of the trial and in all respects are lacking in merit; indeed many suggest a disregard for the record of this case. The prejudice now cited is built on rhetoric and not on reality.

The motion for a new trial is in all respects denied.

So ordered.