COMMONWEALTH vs. MICHAEL K. DUPONT.
(and a companion case[1]).

Worcester. April 8, 1974. — October 4, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Robbery. Search and Seizure. Probable Cause. Practice, Criminal,*
Exceptions: failure to save exception; Mistrial; Presence of defend-
ant. *Accessory. Radio Message.*

Where a police officer observed a vehicle being driven suspiciously
around a particular market and, at a later date shortly after being
informed of a robbery at that market, spotted the same vehicle
and observed its occupants acting suspiciously, the officer had
probable cause to search that vehicle. [567-571]
This court declined to consider whether the trial judge erred in
admitting evidence of a pre-trial and in-court identifications of a
criminal defendant, where no exceptions had been saved and
where there was no substantial risk of a miscarriage of justice.
[571]
Chance observance by jurors of criminal defendants in a cellblock
was not ground for a mistrial where the judge, though unaware of
the observance until after the trial, had given the jury ample
instructions of a general nature regarding prejudice, and where
the jury had demonstrated discriminating judgment by acquitting
one defendant of three of the four charges against him. [571-572]
A post-trial examination of two court officers held to discover
whether a jury had been prejudiced did not violate criminal
defendants' rights of confrontation and to counsel, even though
the examination was held in the absence of the defendants and
their counsel. [573]
There was no error in denying a motion for a directed verdict made
by a criminal defendant where there was evidence that the
defendant was in the getaway car twenty minutes after a robbery
executed by the other occupant of the car and at least three
unidentified people. [573-575]

---

[1] Commonwealth vs. Steven E. Hinson.

INDICTMENTS found and returned in the Superior Court on September 23, 1971.

The cases were tried before *Meagher, J.*

*William A. Nelson* for the defendants.

*James P. Donohue,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendants, Dupont and Hinson, appealing under G. L. c. 278, §§ 33A-33G, were jointly tried and convicted of an armed robbery of the Iandoli Market in Milford in the early evening of July 3, 1971. The principal evidence introduced by the Commonwealth consisted of the proceeds of the robbery, which were found and seized minutes after the robbery in a car which was owned and was being driven by Hinson and in which Dupont was a passenger, and of in-court and out-of-court identifications of Hinson by a clerk of the Iandoli Market. The defendants assign as error (1) the denial of their motions to suppress the evidence seized from the car; (2) the introduction of the identification testimony; and (3) matters arising out of an incident which occurred in the course of the trial during a recess whereby certain jurors inadvertently saw the defendants in a cellblock. In addition, the defendant Dupont assigns as error the denial of his motion for a directed verdict.

1. At the voir dire on the motion to suppress the evidence seized from the car testimony was adduced to the effect that, prior to the evening of the Iandoli Market robbery, the defendants were under suspicion by both State and Milford police of having participated in another Milford robbery. Writings to that effect had been posted at the Milford police station, and a Milford officer, Vincent Liberto, had been assigned to "stake out" a 1966 Pontiac, license number 45223K, known to be registered to the defendant Hinson. On April 21, 1971, Officer Liberto observed that vehicle pull into the parking lot of the Iandoli Market, stop there for a brief period, and then move to another parking lot directly

across the street from Iandoli's, where it stopped for a
short while before departing.   Officer Liberto later
learned from other officers that, upon leaving Milford,
the vehicle had proceeded north along Route 495.

On July 3, 1971, at around 6:30 P.M., Officer Liberto
received a radio dispatch informing him that an armed
robbery had just taken place at the Iandoli Market.
Liberto was directed to be on the lookout for a 1962
Chevrolet.   Some three to five minutes later, a second
radio dispatch advised him that the 1962 Chevrolet had
been found abandoned.   Liberto then proceeded to an
entrance ramp along Route 495 and began looking for
the 1966 Pontiac registered to Hinson.   At approximately
6:50 P.M. it drove into view, moving north on Route 495
at a slower rate of speed than the other cars.   Hinson
was driving with Dupont seated beside him.   As they
passed him, Liberto observed both men turn their heads
away from him, and as he pulled out to follow them,
they increased their speed from thirty to thirty-five miles
per hour to sixty to sixty-five miles per hour.   Liberto
turned on his siren and beacon light, observing Dupont
bend down on two occasions and turn twice to look back
at the cruiser.   After motioning the car to pull over,
Liberto observed both men bend down as he approached
the car.   He instructed them to keep their hands visible
and asked for Hinson's license and registration.   Liberto,
seeing a knife handle and part of a blade showing on the
floor board of the driver's side of the car, took possession
of the knife, and placed the defendants under arrest for
"possession of a dangerous weapon and suspicion of
armed robbery."

Liberto then conducted a general search of the car.
Hidden in a well behind the right headlight assembly he
found a pillow case which contained brown money bags,
a green money bag with Iandoli written across it, and
loose currency.   The defendants moved to suppress these
items, but the trial judge found that probable cause
existed for the arrests and search, and therefore ruled the

search reasonable and permitted the items to be introduced in evidence.

Although traditional Fourth Amendment requirements, including the necessity of a search warrant, have been held to apply to automobile searches (*Preston* v. *United States*, 376 U. S. 364 [1964]; *Coolidge* v. *New Hampshire*, 403 U. S. 443 [1971]), the United States Supreme Court has long distinguished between searches of automobiles and searches of buildings (*Carroll* v. *United States*, 267 U. S. 132, 149-153 [1925]; *Cooper* v. *California*, 386 U. S. 58, 59 [1967]; *Chambers* v. *Maroney*, 399 U. S. 42, 48-52 [1970]) and has upheld the warrantless search of an automobile, independent of any arrest, where the search is based upon probable cause, and exigent circumstances exist. *Carroll* v. *United States*, *supra*. Exigent circumstances exist when an automobile is stopped on the highway, because the car is "movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Chambers* v. *Maroney*, *supra*, at 51. This principle applies even where the occupants of the vehicle have been placed under arrest. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers* v. *Maroney*, *supra*, at 52.

The critical question is whether Officer Liberto had probable cause to search the vehicle, in other words, whether he had "'reasonable or probable cause' to believe . . . [he would] find the instrumentality of a crime or evidence pertaining to a crime before [he began his] warrantless search." *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U. S. 216, 221 (1968).[2] See also *Common-*

---

[2] Although we consider probable cause to search, rather than (as did the trial judge in the instant case) probable cause to arrest, the

*wealth* v. *Barnes, ante,* 357, 359-360 (1974). We agree
with the trial judge that Liberto had probable cause.
Officer Liberto had been alerted through radio dispatches
that a robbery had just occurred at the Iandoli Market,
and that the original getaway car had been abandoned.
Relying on this information and on his prior knowledge of
the defendants' suspected complicity in an earlier robbery,
coupled with his own observations of the earlier apparent
reconnaissance of the Iandoli Market by Hinson's car on
April 21, 1971, Liberto proceeded to Route 495, the
highway Hinson's car had taken upon their departure
from Milford on April 21, 1971. Within twenty minutes
of the first radio dispatch, Liberto observed the
defendants in Hinson's car proceeding north on Route
495. As the defendants passed him, they turned their
heads away. When Liberto pulled onto the highway and
began to follow them, they increased their speed, and he
observed Dupont bend down on two occasions and look
back at the cruiser twice. Under these circumstances,
Liberto had probable cause to stop and search the car,
apart from the arrests which followed his subsequent
observation of the knife. *Chambers* v. *Maroney,* 399
U. S. 42, 47-48 (1970). *Commonwealth* v. *Barnes,*
*supra.* This was not an instance where the defendants
were arbitrarily stopped merely because of police sus-
picion of prior activities alone. To the contrary, in addi-
tion to Liberto's earlier observations while staking out
Hinson's car, from which he could have hypothesized
that its occupants had been engaged in a dry run for a
robbery of the Iandoli Market, the reappearance of that
car at the time and place anticipated confirmed the
hypothesis, and made reasonable an inference that
Hinson's car was involved in the robbery. *Common-*
*wealth* v. *Riggins,* 366 Mass. 81, 86-87 (1974). The
search was not arbitrary. Mere coincidence was too

standards are the same. *Whiteley* v. *Warden,* 401 U. S. 560, 564
(1971). *Commonwealth* v. *Stevens,* 362 Mass. 24, 27 (1972).

improbable. The defendants' subsequent suspicious behavior tended to corroborate the preëxisting probable cause. *Commonwealth* v. *Breen*, 357 Mass. 441, 444-446 (1970).

2. The second assignment of error before us is the introduction in evidence of the pre-trial and in-court identifications of the defendant Hinson by John O'Connor, a grocery clerk at the Iandoli Market. On the night after the robbery, the police showed Hinson's driver's license to O'Connor without indicating how it had been obtained and asked him if he recognized the picture. O'Connor identified it as that of the driver of the getaway car at the robbery. He also identified Hinson at the trial. Hinson argues that the showing of his driver's license to O'Connor was unnecessarily suggestive, and that it tainted as well the subsequent identification at trial.

We do not consider the argument. There was no motion made to suppress the identification under former Rule 101B of the Superior Court, as amended (now Rule 61 of the Superior Court [1974]). Even more decisive is the defendant's failure to take any exception either to the testimony as to the out-of-court identification or to the in-court identification. An assignment of error which is not based on an exception brings nothing before us for review. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336 (1928). *Commonwealth* v. *Foley*, 358 Mass. 233, 236 (1970). *Commonwealth* v. *Dinnall*, 366 Mass. 165, 169 (1974). This court does have the power to review on the merits an assignment of error where no exceptions have been saved, but this power is exercised only where there exists a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). *Commonwealth* v. *Concepcion*, 362 Mass. 653, 654 (1972). Such a risk is not present here.

3. The defendants' next assignment of error concerns an inadvertent viewing of the defendants in a cellblock by at least some of the jury when an elevator on which

the jurors were riding stopped briefly at the wrong floor. The incident was not brought to the attention of the court until after the verdict was received and the jury were discharged. The defendant Dupont stated (through counsel) that he had heard one of the jurors exclaim, "Oh, my God!"

The defendants, conceding that the judge had no opportunity to give curative instructions, argue that the jurors should have been examined to inquire into possible prejudice (although they made no suggestion to that effect at the time), and that absent such an examination their motions for a mistrial should have been granted. The only authority the defendants cite respecting the polling of the jury is *Commonwealth* v. *Crehan*, 345 Mass. 609, 615 (1963), where the court found that the publication of newspaper articles during the trial warranted either an immediate examination of the jurors concerning possible prejudice or specific instructions regarding these articles. We do not find the *Crehan* case applicable here for two reasons. First, in the *Crehan* case the defendants moved for a poll, the motion was denied, and an exception was saved; here, no motion nor even a suggestion was made. Second, in the *Crehan* case the motion was made during the trial when there was still an opportunity to give curative instructions. Here, the verdict had been recorded, the trial had ended, and any possible prejudice could not be averted. The trial judge had already given ample instructions of a general nature regarding prejudice. That the jury found the defendant Hinson not guilty of three of the four indictments against him and acquitted Dupont on two of the three indictments against him indicates that the jury exercised discriminating judgment. See *Commonwealth* v. *Richards*, 363 Mass. 299, 309 (1973). Furthermore, there is considerable authority holding that the chance observance by jurors of a defendant while handcuffed or in custody is not ground for a mistrial. *McCoy* v. *Wainwright*, 396 F. 2d 818 (5th Cir. 1968). *United*

*States* v. *Leach,* 429 F. 2d 956, 962-963 (8th Cir. 1970), cert. den. 402 U. S. 986 (1971). *United States* v. *Figueroa-Espinoza,* 454 F. 2d 590, 591 (9th Cir. 1972). *United States* v. *Sperling,* 362 F. Supp. 909, 913 (S. D. N. Y. 1973). See also *Commonwealth* v. *Stewart,* 365 Mass. 99, 108-109 (1974).

On the day after the trial had ended, the trial judge examined two court officers who had been present during the incident. The court officers told the judge that none of the jurors had commented on it. The defendants contend that this examination by the judge, in the absence of the defendants or their counsel, violated their rights of confrontation and to counsel. We find this claim to be without merit. In contrast to *Commonwealth* v. *Robichaud,* 358 Mass. 300 (1970), which involved a voir dire on the issue of juror misconduct during the trial, and at which the defendant was not present, the examination here was undertaken after the trial had ended, and was not part of the regular trial proceedings. In the *Robichaud* opinion, the court clearly indicated that the right of the defendant to be present extended only to the trial itself. 358 Mass. at 302. It does not attach at hearings on motions for a new trial (*Commonwealth* v. *Costello,* 121 Mass. 371, 372 [1876]) or various pre-trial motions. See *Commonwealth* v. *Millen,* 289 Mass. 441, 454-455 (1935), cert. den. 295 U. S. 765 (1935). Likewise, the examination at issue here was not a "critical stage" of the proceedings requiring the presence of counsel. *United States* v. *Wade,* 388 U. S. 218, 224 (1967). Those proceedings had ended the day before.

4. The defendant Dupont also assigns as error the denial of his motion for a directed verdict, contending that the evidence linking him to the robbery was insufficient to warrant its submission to the jury. The evidence against Dupont was largely circumstantial in nature, and proof of the crucial facts necessarily depended on inferences which the jury might draw from the circumstances. *Commonwealth* v. *Bonomi,* 335

Mass. 327, 355-356 (1957). "When a material fact is not proved by direct testimony, but is left to be inferred from the facts directly sworn to, the inference need not be a necessary one. There is a case for the jury, unless the inference either is forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events. If there is a case for the jury, they are at liberty to use their general knowledge in determining what inferences are established beyond a reasonable doubt; and the facts inferred by them are as properly proved as if directly testified to." *Commonwealth* v. *Doherty*, 137 Mass. 245, 247 (1884).

The jury could reasonably have inferred from Dupont's presence in the getaway car approximately twenty minutes after a robbery that had been executed by Hinson and at least three unidentified robbers, that Dupont was himself one of the three other robbers. Far from being impermissibly remote, such an inference seems rather compelling. See *Commonwealth* v. *Medeiros*, 354 Mass. 193, 196-198 (1968), cert. den. sub nom. *Bernier* v. *Massachusetts*, 393 U. S. 1058 (1969). While there may have been an innocent explanation for Dupont's presence in the car, that possibility went only to the weight of the evidence. *Commonwealth* v. *Medeiros, supra*, 197-198.

*Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71 (1973), cited by Dupont, does not control this case. There, two witnesses observed the defendant Murphy hurl an unidentified object at a dwelling house, resulting in an explosion, and then enter a light blue Cadillac on the driver's side and drive away. A second, unidentified man was seen in the passenger side of the front seat. Thirty minutes later, the police stopped the vehicle, which the defendant Tilley was driving with Murphy seated beside him. The gist of our decision as to the charges against Tilley was that mere presence at the scene of a crime, coupled with a failure to take affirmative steps to prevent it, does not render a person liable as a

principal.   See *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972); *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973); *Commonwealth* v. *Flowers*, 1 Mass. App. Ct. 415, 419 (1973).   In reaching a contrary conclusion as to Dupont, we place great weight on the different natures of the crimes involved.   While it could reasonably be inferred in the *Murphy* case that only one man had committed the criminal act, the evidence here clearly established that at least four men had participated in the robbery.   Under the circumstances in which Dupont was apprehended, the possibility of his complicity rises above the level of "a conjecture or suspicion." *Commonwealth* v. *Murphy, supra*, at 77.   Accordingly, we find no error in submitting the issue to the jury.

*Judgments affirmed.*